Argued April 24, reversed and remanded July 16, 1929.

ALICE WHITE *v.* SAM GORDON ET AL.

(279 Pac. 289.)

For appellants there was a brief over the name of *Mr. O. A. Neal,* with an oral argument by *Mr. Arthur A. Goldsmith.*

For respondent there was a brief and oral argument by *Mr. D. D. Hail.*

BELT, J.—This is an action for deceit based upon alleged fraudulent representations of the defendants. The defendants Sam Gordon and Ida Gordon were partners engaged in the real estate business in the City of Portland, under the firm name of Gordon Mortgage Company. The defendant Mrs. A. V. Bailey was employed by the Gordons as the manager of the "Business Chance Department." Mrs. Ruth Shaler operated a business in the city known as the "Rose Gate Tea Room." She secured the services of the Gordon Mortgage Company for the purpose of finding a suitable partner in the business. In response to an advertisement, the plaintiff came to the offices of the Gordon Mortgage Company. Plaintiff

never became a partner of Mrs. Shaler, but, as alleged in the complaint, she entered into a contract to loan her $1,500 in cash, to put certain furniture in the business and to enter her employ for one year at a salary of $100 per month. It is alleged that "such loan and salary were to be secured by the execution by Ruth Shaler of a note and mortgage upon all the business and assets of the aforesaid business, the assignment by Ruth Shaler of her leases upon the aforesaid buildings and the insurance on such furniture." Plaintiff alleges that, pursuant to the terms of the above contract, she loaned Ruth Shaler $1,500, put furniture into the business amounting to $500 and entered her employ for a period of three months whereupon she was discharged. Mrs. Shaler became heavily involved financially and defaulted in payments on the note and also failed to pay plaintiff for services rendered. Plaintiff instituted a suit for appointment of a receiver and, after a decree of court, the property was sold to satisfy the demands of the creditors. Plaintiff realized $600 from this sale.

Plaintiff avers that she was induced to enter into the contract, as alleged in the complaint, by reason of the false and fraudulent representations of Mrs. Bailey, acting as agent for the Gordon Mortgage Co. Mrs. Bailey is alleged to have represented that Ruth Shaler's business was free and clear of all indebtedness excepting $1,000 due Meier & Frank Company; that the furniture used therein had been paid for in full; that such business was being operated at a net profit of $600 per month and was reasonably worth $12,000 and that Mrs. Shaler held valid leases on the buildings where such business was being operated.

Plaintiff says that these representations were false in that the business was being operated at a loss of about $350 per month, that the property was heavily encumbered and that Ruth Shaler was, at the time these representations were made, insolvent.

Plaintiff asked judgment for $1,500 less $600 paid on March 28, 1927; $300 for services rendered; $500 for furniture; $600 for services rendered in caring for property while receivership proceedings were pending, and $400 paid for attorney fees. Defendants interposed a general denial to the charge of fraud and the damages alleged to have been sustained. Verdict and judgment were had for plaintiff in the sum of $2,700. Defendants appeal.

■ Defendant Gordon denies liability as principal for the reason that, if the alleged fraudulent representations were made by Mrs. Bailey, it was done while she was acting beyond a scope of her authority. He asserts that the Gordon Mortgage Company dealt in real estate mortgages, and in addition thereto, operated a Business Chance Department, but that the partnership never negotiated loans on chattel security. Assuming that Mrs. Bailey had no express authority to negotiate this loan, it does not follow that she was acting beyond the scope of her apparent authority. The transaction was closed in the offices of the Gordon Mortgage Company with the aid and assistance of an attorney employed by the Gordons, and the commission of $150 was paid by plaintiff to the company for the services rendered. Certainly there is evidence from which a jury might well infer that, as to third persons, Mrs. Bailey was authorized so to act. We are not concerned with any restrictions or limitations put upon her authority by the

principal, of which the plaintiff had no notice: *Thomas v. Smith-Wagoner Co.*, 114 Or. 69 (234 Pac. 814).

■ It is urged by the defendant Gordon that, since this is an action for deceit, as distinguished from one for rescission, he cannot be held liable for the false representations of the agent without having participated in the fraud. A few cases may be found which support this contention, but the great weight of modern authority is to the contrary. If Mrs. Bailey was acting within the scope of her real or apparent authority and her false representations induced the plaintiff to enter into the contract, the fraud of the agent would be the fraud of the principal. It is immaterial that Gordon had no knowledge of the representations made or that he did not personally participate in the perpetration of the fraud. As stated in Kerr on Fraud and Mistake, page 426:

"A principal is liable to third persons for frauds, deceits, concealments, torts and omissions of duty of his agent, when acting in the course of his employment, although the principal did not authorize or justify or participate in, or indeed know of such misconduct, or even if he forbade the acts or disapproved of them."

Also see Mechem on Agency (2 ed.), § 1995; Story on Agency (9 ed.), § 452; 2 C. J., p. 858.

■ According to the allegations of the complaint, plaintiff was induced, through fraudulent representations, to loan $1,500. If her testimony is to be believed, the representations which Mrs. Bailey made in reference to the adequacy of the security were false. The measure of damages for fraudulently procuring a loan on inadequate security is the difference between the amount of the loan and the value of the security at the date of the loan, with interest from

that time: 12 R. C. L. 456; 27 C. J. 103. Plaintiff admits having received payment of $600. Therefore, upon her theory of the case, she would be entitled to recover $900 together with interest from date the loan was made.

There is no evidence of the value of the security at the time the loan was made. All the evidence offered concerning such value related to the time of the sale by the receiver more than a year later. If the security was adequate at the time of the loan, the defendants could not be held liable if there was a subsequent depreciation in value.

■ We are unable to see wherein the defendants, or either of them, should respond for other items of damage. There is no evidence that Mrs. Bailey, through fraudulent representations, induced the plaintiff to agree to put $500 worth of furniture into the business. The contract does not so provide. This was a mere voluntary act on her part and, while she may have a cause of action against Mrs. Shaler, the defendants are not liable. The fact that Mrs. Shaler discharged the plaintiff after she had rendered three months of service is too remote and is not the proximate result of the alleged false representations: Kerr on Fraud and Mistake, p. 432. That the plaintiff should not recover for attorney fees and for the value of her services in caring for the property under the receivership proceedings seems too clear to require citation of authorities.

Since the trial court instructed the jury that there could be no recovery upon the second cause of action, assignments of error and argument relating thereto are passed without discussion.

The judgment for $2,700 against the defendants is reversed and the cause remanded for a new trial,

with directions to proceed not inconsistent with this opinion.                    REVERSED AND REMANDED.

McBRIDE and BEAN, JJ., concur.

BROWN, J., absent.