[No. 38413.    Department Two.    March 30, 1967.]

SAMUEL F. SIGMAN et al., *Respondents*, v. STEVENS-NORTON, INC., *Appellant*, ALICE J. MONK, *Respondent*.*

*Reported in 425 P.2d 891.

*Torbenson, Thatcher, Stevenson & Burns* and *Larrie E. Elhart*, for appellant.

*Evan E. Inslee* and *Johnson, Jonson & Inslee*, for respondents.

DENNEY, J.†—Respondents, Samuel F. Sigman and wife, sought by this action to recover from appellant, Stevens-Norton, Inc., mortgage brokers, and Alice J. Monk, damages arising from respondents' delivery to Stevens-Norton, Inc., of $5,358 to be loaned to Alice J. Monk. Mrs. Monk defaulted. After trial judgment was entered against both parties. Stevens-Norton, Inc., appeals.

The action is bottomed upon alleged fraud and deceit practiced by appellant Stevens-Norton, Inc., in misrepresentations made by its agent at the time respondents' money was entrusted to it.

The trial court made findings of fact that, at solicitation of an agent of appellant, respondents were induced to make the loan to Alice J. Monk by representations to the effect that it was a safe loan secured by a second mortgage on five

---

†Judge Denney is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

parcels of real property; that Mrs. Monk's income and revenue from said properties were sufficient to pay first mortgage payments and to pay respondents on their second mortgage; that Mrs. Monk had substantial equity in the properties based on appraisals by competent appraisers; and that respondents' second mortgage would be covered by title insurance insuring respondents in a second mortgage position. The trial court further found said representations to be false and known at the time to be such; that they were made with intent that respondents should rely on them; and that appellant at no time intended to secure a second mortgage on said parcels of real estate. The trial court further found that appellant knew Alice J. Monk had no fee interest in the properties but was only a contract purchaser; that prior mortgages and encumbrances existed against some of the properties which placed respondents in a position other than that of a second mortgagee; and that the existence of prior liens and encumbrances was known to appellant from title reports in its possession. It was further found that appellant had credit reports showing the poor financial condition of Alice J. Monk, and that appellant knew from appraisals that Alice J. Monk had less equity in the properties than was represented in her application for a loan.

Mrs. Monk's note for $5,700 was delivered to respondents but the mortgage and title reports were not. Respondents never saw them until they employed an attorney after Mrs. Monk had defaulted in payment of the note and when the contract sellers and a prior mortgagee were about to commence action to forfeit the contracts or foreclose the prior mortgage.

The trial court found that respondents' damage should be measured by the difference in the value of the note and mortgage had it been as represented—$6,656.92 (amount of loan plus interest on declining balances) and $4,000, the value of such note and mortgage on the date the loan was made. Judgment was entered for the difference, $2,656.92 plus $400 as legal expenses incurred by respondents in

mitigating damage by investigating forfeiture and foreclosure actions brought by contract sellers and first mortgagee on four of the five parcels covered by respondents' mortgage.

A purchaser under an executory contract has an interest which he can mortgage. Therefore, asserts appellant, there is no substantial difference in a mortgage on purchaser's interest in a land contract and a second mortgage. There is, however, a considerable difference in that there is no lien on the fee under a mortgage on buyer's interest and forfeiture of a land contract gives the junior encumbrancer no right of redemption. Moreover, there was here an underlying contract on one of the parcels and underlying mortgages on three other parcels which placed respondents' lien in a position other than second. The term "second mortgage" means a lien right second only to a superior lien of a first mortgage and does not contemplate a mortgage on a buyer's interest in a land contract. This was respondents' understanding and they were misled in receiving security inferior to a second mortgage.

The representation as to the quality of security received by the Sigmans was not the only act upon which the claim of fraud was predicated. Appellant willfully withheld from respondents the security documents, title reports and credit reports which would have revealed the true situation. Because of superior knowledge and the relationship of the parties, appellant was under a duty to reveal the true facts to respondents. The situation is closely akin to that which obtained in the case of *Boonstra v. Stevens-Norton, Inc.*, 64 Wn.2d 621, 625, 393 P.2d 287 (1964), where we said:

> Here, because of the superior business acumen and experience of appellant as compared with respondent, because of the superior factual knowledge of the one as against the factual ignorance of the other, and because appellant's officer knew respondent was relying on his superior knowledge, experience and judgment, there existed a quasi-fiduciary relationship, if not an actual one, that brings the case within the rule that a
>
> " . . . party to a business transaction is under a duty to exercise reasonable care to disclose to the other before

the transaction is consummated . . . such matters as the other is entitled to know because of a . . . relation of trust and confidence between them, . . ." Restatement, Torts § 551(2)(a), p. 116.

See also *Oates v. Taylor,* 31 Wn.2d 898, 199 P.2d 924 (1948).

■ Appellant contends that regardless of what representations were made by it, respondents were not warranted in relying on and did not rely on them. In support of the claimed lack of reliance appellant cites testimony of respondent Samuel Sigman that he had previously made 23 loans secured by mortgages on purchaser's interests in land contracts. Mr. Sigman later testified to the contrary, that such previous loans were secured by second mortgages subject only to first mortgages. Appellant also emphasizes that it delivered a receipt to respondents after the loan was made which showed that land contracts rather than first mortgages were the underlying encumbrances. Respondents counter that they did not read the receipt; that they were not required to sign it; and in any event, they had already parted with their money. Appellant would have us weigh other circumstances alluded to at the trial and come to a different conclusion from that of the trial court. We cannot substitute our judgment for that of the trial court on disputed factual issues. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959); *Adamec v. McCray,* 63 Wn.2d 217, 386 P.2d 427 (1963); *O'Byrne v. Spokane,* 67 Wn.2d 132, 406 P.2d 595 (1965). Respondents adduced ample evidence to warrant the conclusion of the trial court that they in fact relied on the representations of appellant's salesman.

We are firmly of the opinion that respondents had the right to rely on the representations made. The fact that Mr. Sigman had viewed the lands involved prior to previous investments and the fact that he had twice declined investments offered by appellant were circumstances to be considered by the trier of the fact. The presumption that a purchaser is being dealt with fairly, together with the high degree of duty incumbent upon one in appellant's position,

*Boonstra v. Stevens-Norton, Inc., supra,* preclude us from upsetting the findings of the trial court. We find the trial court's findings on this issue to be supported by substantial evidence and we will not interfere with such findings.

Appellant also points out that Mr. Sigman ascertained that Mrs. Monk did not have a bank account attributed to her by appellant's agent. We note that the trial court's findings of actionable fraud were not based on this representation.

■ The case of *Webster v. L. Romano Eng'r Corp.,* 178 Wash. 118, 120, 34 P.2d 428 (1934), sets forth the nine essential elements of fraud as:

(1) A representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it; (9) his consequent damage.

The contested elements have been discussed above. We conclude, as did the trial court, that all elements of fraud were proven by clear, cogent and convincing evidence.

The trial court ruled that the measure of damages was the difference between the value of the note and mortgage had the same been as represented, and the actual value of such note and mortgage on the date of the loan—"the benefit of the bargain" rule. Appellant contends that the rule should be as announced in two other states, the true measure of damage in a situation of this kind being the difference between the amount of the loan and the value of the security at the date of the loan with interest from that time. *White v. Gordon,* 130 Ore. 139, 279 Pac. 289 (1929); *Crowley v. Goodrich,* 114 Vt. 304, 44 A.2d 128, 162 A.L.R. 691 (1945).

In the case of *Hoke v. Stevens-Norton, Inc.,* 60 Wn.2d 775, 779, 375 P.2d 743 (1962), this court held that one who claimed fraud and deceit had waived his right to rescission, and in discussing whether or not damages could be allowed

under facts similar to those involved in this case, we held that restoration of the purchase money was not the applicable measure of damages and that the benefit of the bargain rule applied in such case. We said:

In commercial transactions such as this, where damages are sought as a result of fraud and deceit, the majority of the courts appear to favor applicability of the "benefit of the bargain" measure of damages, that is, the difference between the value of the security had such been as represented (a second mortgage upon a fee simple title) and the actual or real value of the security received. 1 Harper & James, Torts § 7.15, pp. 591, 603; 108 A. L. R. 1060; 37 C.J.S., Fraud § 143b, p. 476, *et seq.*; 24 Am. Jur., Fraud and Deceit § 227, p. 55.

We see no good reason why we should not again adopt the rule announced in the *Hoke* case, *supra.* We should not look solely to the value of the security but should consider the value of the note and mortgage. It is true that in determining such value one must look to the underlying security, but one must also look to the repayment ability of the borrower, the nature of the prior encumbrances, the position of the lender in case of default, the income from rentals, the character of the borrower and other factors. These factors are best reflected in determining the value of the note and mortgage.

In this case the trial court determined the value of the investment, had the facts been as represented, to be the face amount of the note plus interest on declining balances in accordance with the terms of the note, *viz.* $6,656.92. After considering all the factors heretofore mentioned, he determined the true value to have been $4,000 on the date of the loan. The determination of value is not free from difficulty and cannot be computed with mathematical exactness, but such is not required. Where the fact of damage is firmly established (and it was here) the wrongdoer is not free of liability because of difficulty in establishing the dollar amount of damage. In the case of *Wenzler & Ward Plumbing & Heating Co. v. Sellen,* 53 Wn.2d 96, 98, 330 P.2d 1068 (1958), we said:

Uncertainty as to the fact of damage is ground for denying liability, but the fact of damage being removed from the field of controversy by uncontradicted proof, immunization of the party responsible does not result from uncertainty as to the dollar amount of the damage.

The controlling rule of law was summarized by the United States Supreme Court in the following passage from its opinion in *Bigelow v. RKO Radio Pictures, Inc.,* 327 U. S. 251, 90 L. Ed. 652, 66 S. Ct. 574, a private triple-damage action under the antitrust laws:

"The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. . . .

" 'The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery' for a proven invasion of the plaintiff's rights. . . ."

See also *Sund v. Keating,* 43 Wn.2d 36, 259 P.2d 1113 (1953); *Gaasland Co., v. Hyak Lumber & Millwork, Inc.,* 42 Wn.2d 705, 257 P.2d 784 (1953). The trial court's determination of the true value of the note and mortgage on the date of the loan is well within the evidence and was a reasonable conclusion to be derived from such evidence.

Both parties presented evidence by appraisers on the value of the mortgaged parcels of property except for a parcel located on East Marginal Way in Seattle about which respondents offered no testimony. It is contended therefore that there is no evidence in the record showing that respondents were damaged because appellant's appraisal showed that Mrs. Monk had an $11,000 equity in the property. However, respondents did show that Mrs. Monk had purchased this property shortly before the appraisal for $9,000 less than appellant's appraisal, thus leaving little, if any, equity over existing encumbrances. Furthermore, appraisals were not the sole criterion in determining damages. As we have already stated, other factors are properly considered in determining value.

Respondents bought a certificate of purchase on one of the parcels of property after the National Bank of Com-

merce had foreclosed its underlying mortgage and bid the property in at foreclosure sale. Said property was appraised by respondents' appraiser at a price somewhat above the amount paid for the certificate of purchase. This fact was one of the considerations in the finding of the trial court that the value of the note and mortgage was $4,000 at the time of the loan. It does not sustain appellant's contention that no recovery is warranted.

■ After commencement of a forfeiture action on one of the parcels of property, respondents released their mortgage in consideration of payment of $100 to them. This, it is contended, was imprudent and respondents should have foreclosed their mortgage to further mitigate damages. The evidence does not show that foreclosure costs, resale costs and other factors would have left anything for respondents. Like the trial court, we find that respondents acted reason- ably.

■ When respondents were confronted with an action to foreclose an underlying mortgage on one of the parcels of property together with three actions to forfeit purchaser's interest in land contracts they employed an attorney to examine into the matter to determine what should be done in an effort to mitigate damages and ascertain if payment of such mortgage or contracts was feasible. The trial court granted judgment of $400 for attorney fees incurred in this effort. This was done pursuant to the rule that when the natural and proximate consequences of a wrongful act by a defendant involve plaintiff in litigation with third parties, damages may be recovered for the reasonable expenses incurred in the litigation including compensation for attorney fees. *Wells v. Aetna Ins. Co.*, 60 Wn.2d 880, 376 P.2d 644 (1962). Appellant must have realized that its wrongful acts might well result in forefeiture actions and that a thorough investigation would be necessary to ascertain what action, if any, should be taken to mitigate damages. The trial court did not err in allowing a reasonable fee of $400 for the extensive work in this investigation.

Mrs. Monk made payment of $432.67 on the principal of the note and the findings of the trial court do not disclose

that such payment was considered in entering judgment. Respondents contend that this sum was included in the value placed on the note and mortgage but the findings of fact and judgment indicate otherwise. Judgment was entered for the difference in the value of the note and mortgage as represented and its actual value on the date of the loan. Any payment made after the date of the loan should therefore have been deducted from such difference.

The judgment of the trial court must therefore be modified by deducting $432.67. As so modified, the judgment of the trial court is affirmed. Respondents will recover costs.

FINLEY, C. J., OTT, HUNTER, and HAMILTON, JJ., concur.

June 2, 1967. Petition for rehearing denied.

*Reported in 425 P.2d 920.