967 F.2d 596
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
VANCOUVER FURNITURE, Plaintiff-Appellant,
v.
GENERAL ELECTRIC RETAIL SYSTEMS, Defendant-Appellee.
 Nos. 90-35716, 90-35866.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 7, 1992.
Decided June 2, 1992.
 
 Before JAMES R. BROWNING, D.W. NELSON and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Vancouver Furniture ("Vancouver") challenges numerous rulings and jury instructions by the district court during the trial of this action. We affirm.
 
 DISCUSSION
 Negligence
 
 3
 The district court withdrew Vancouver's negligence claims from the jury immediately prior to closing arguments after concluding that Vancouver had neither adequately pleaded nor proved a negligence claim. Vancouver argues that valid negligence claims arose out of its contractual relationship with General Electric Retail Systems ("GERS"). Whether Vancouver's claims sound in contract or tort (i.e., negligence) depends upon whether the law imposed a duty on GERS, distinct from the duties imposed by the contract between Vancouver and GERS, which GERS then breached. Thao v. Control Data Corp., 57 Wash.App. 802, 790 P.2d 1239, 1242 (1990); accord American Nursery Products, Inc. v. Indian Wells Orchards, 115 Wash.2d 217, 797 P.2d 477, 485 (1990) (dicta); Gazija v. Nicholas Jerns Co., 86 Wash.2d 215, 543 P.2d 338, 340 (1975). We conclude that the law imposes no such distinct duty. GERS could not and would not have had a legal duty to provide computer services and goods to Vancouver in the absence of their contractual agreement.
 
 
 4
 Vancouver relies on three Washington cases involving service contracts to support its claim that a duty actionable in tort may arise from a contract. Vancouver misreads these cases. In each case, the defendant's duty arose otu of non-contractual law. The existence of a contract was merely incidental to the legal basis for the claim. See Lewis v. Scott, 54 Wash.2d 851, 341 P.2d 488, 492-93 (1959); Yeager v. Dunnavan, 26 Wash.2d 559, 174 P.2d 755, 757 (1946); Compton v. Evans, 200 Wash. 125, 93 P.2d 341, 344 (1939). Vancouver does not argue that a fiduciary relationship or any other legal duty was created by its contract with GERS,[1] and the district court specifically found that no fiduciary relationship existed. In the absence of any legal duty, Vancouver could not raise a valid negligence claim. The district court did not err by withdrawing the negligence claims from the jury.
 
 Intentional Misrepresentation
 
 5
 The district court directed a verdict in GERS' favor on Vancouver's intentional misrepresentation claim. We review the directed verdict de novo to determine whether, when the evidence as a whole is viewed in the light most favorable to Vancouver and drawing all inferences in its favor, the only reasonable conclusion is that GERS is entitled to judgment as a matter of law. See Hammer v. Gross, 884 F.2d 1200, 1203 (9th Cir.1988), vacated on other grounds, 932 F.2d 842 (9th Cir.), cert. denied, 112 S.Ct. 582 (1991).
 
 
 6
 To prove common law fraud[2] under Washington law Vancouver was required to establish the existence of: (1) a representation of an existing fact; (2) its materiality; (3) its falsity; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person to whom it is made; (6) ignorance of its falsity on the part of the person to whom it is made; (7) the latter's reliance on the truth of the representation; (8) his right to rely on it; and (9) his consequent damage. Sigman v. Stevens-Norton, Inc., 70 Wash.2d 915, 425 P.2d 891, 895 (1967). Vancouver's proof for each element of fraud had to be "clear, cogent and convincing," id., and an insufficiency of proof for any one element is fatal to the entire claim. Beckendorf v. Beckendorf, 76 Wash.2d 457, 457 P.2d 603, 607 (1969).
 
 
 7
 Vancouver points to four pieces of evidence which it argues support the intentional misrepresentation claim; we comment upon each in turn:
 
 
 8
 (1) Tom Lockwood testified that he learned that the statement made in his January 1986 letter regarding the S/140 computer's report-producing capacity was not true, but he failed to inform Vancouver of his error.
 
 
 9
 This evidence did not establish that Lockwood either knew that his statement was false or that he was ignorant of the truth at the time he wrote and sent the letter to Vancouver.
 
 
 10
 (2) Vancouver relied on GERS's promise to provide an accounts receivable system and, based on that reliance, remained a customer of GERS and paid its monthly telephone support fees.
 
 
 11
 While reliance is one element of fraud, it is certainly not sufficient standing alone. Vancouver also had to establish that the misrepresentations upon which it relied were fraudulent.
 
 
 12
 (3) Faith Kromer testified that the "promise" to complete programming by January 31, 1987, which was made in her October 1986 letter, was false.
 
 
 13
 Kromer's letter stated "[w]e anticipate to have the programming completed by January 31, 1987." This is a non-actionable statement of intention, not a promise. Meissner v. Simpson Timber Co., 69 Wash.2d 949, 421 P.2d 674, 679 (1966). Further, Vancouver offered no evidence which suggests that Kromer knew at the time she wrote and sent the letter that her statement was false.
 
 
 14
 (4) Kromer testified that David Featherstone's statement in his March 1987 letter that "[s]everal [GERS] staff members have been working full time for several months" on the accounts receivable software was false.
 
 
 15
 Vancouver failed to demonstrate that it detrimentally relied on this representation, or that Featherstone knew at the time he made the statement that it was false.
 
 
 16
 In sum, even looking at Vancouver's evidence in its most favorable light, Vancouver did not establish each of the requisite elements of common law fraud clearly, cogently, and convincingly. The district court's directed verdict was proper.[3]
 
 Implied Warranty
 
 17
 Vancouver raises two objections to the district court's jury instructions on implied warranty: (1) the district court erroneously required the jury to find that a contract existed before it could find that an implied warranty existed, and (2) the district court failed to instruct the jury on how to find that a contract existed. We review a district court's formulation of jury instructions for an abuse of discretion. Maxwell v. Hapag-Lloyd Aktiengesellschaft, 862 F.2d 767, 768 (9th Cir.1988). Taken as a whole, the instructions must fairly present the issues to the jury. Carvalho v. Raybestos-Manhattan, Inc., 794 F.2d 454, 455 (9th Cir.1986).
 
 
 18
 Vancouver argues that a claim for implied warranty does not depend on the existence of a contract. We need not look any further than Washington's Uniform Commercial Code, Wash.Rev.Code § 62A.2-314: "a warranty that the goods shall be merchantable is implied in a contract for their sale if ...;" see also Wash.Rev.Code § 62A.2-315 (dealing with "contracting" for implied warranty of fitness for a particular purpose). The district court correctly instructed the jury that a contract was required before an implied warranty could be found.
 
 
 19
 Vancouver did not state distinctly its objection to the failure of the district court to define the elements of a contract before the jury retired. Fed.R.Civ.P. 51; see also Grosvenor Properties Ltd. v. Southmark Corp., 896 F.2d 1149, 1152-53 (9th Cir.1990). Vancouver argues that it preserved its objection by submitting a "correct" instruction and by objecting to the district court's instruction. The purportedly correct instruction, however, contains the same failure to define the elements of a contract that the district court's instruction, to which Vancouver now objects, did. If the district court had adopted Vancouver's requested instruction, then the identical error would have occurred. Vancouver waived this objection at trial, and we therefore need not reach the merits of Vancouver's second argument.
 
 Accord and Satisfaction
 
 20
 The district court submitted to the jury the question whether Vancouver's $9,716 payment to GERS constituted accord and satisfaction of Vancouver's antitrust claims. The jury concluded that it did. Vancouver appeals the district court's submission of this question to the jury, the propriety of which we determine by assessing whether Vancouver was entitled to a directed verdict on GERS' defense of accord and satisfaction. See supra discussion of standard of review for directed verdicts; see also Milgard Tempering, Inc. v. Selas Corp. of America, 902 F.2d 703, 712 (9th Cir.1990) (de novo review of accord and satisfaction).
 
 
 21
 Vancouver raises two arguments: the release which was the basis for the accord and satisfaction was insufficient as a matter of law, and the contract which allegedly resulted in an accord and satisfaction was illegal. An accord and satisfaction consists of three elements: (1) a bona fide dispute, (2) an agreement to settle that dispute, and (3) execution of that agreement. Milgard, 902 F.2d at 712 (Washington law).[4] The essential element of accord and satisfaction is the intention of the parties: that is, whether there was a meeting of the minds on the subject matter of the agreement and an intention to reach a genuine compromise. Id. These questions are ordinarily left to the fact finder. Id.
 
 
 22
 There is no apparent disagreement between the parties that there was a bona fide dispute over Vancouver's obligations under the contract. There is also no disagreement that Vancouver and GERS negotiated an agreement to settle some part or all of the dispute and that the agreement was executed by Vancouver's payment of $9,716 to GERS. Vancouver argues only that its antitrust claims were not included in the agreement which settled the dispute with GERS. Specifically, Vancouver complains that there was no "explicit release evidence" pertaining to its antitrust claim. No such requirement exists for a valid accord and satisfaction. The existence and scope of the accord and satisfaction could have been either explicit or implied by the surrounding circumstances. Evans v. Columbia International Corp., 3 Wash.App. 955, 478 P.2d 785, 786 (1971). Because there was competing evidence before the court, the district court properly submitted the question of the intent of the parties to the jury.
 
 
 23
 Vancouver's second argument, complaining of the illegality of the contract upon which the accord and satisfaction is based, is actually an attack on the sufficiency of the consideration given by GERS in return for the $9,716 payment by Vancouver. Like any other contract, an accord and satisfaction agreement must be supported by consideration. Perez v. Pappas, 98 Wash.2d 835, 659 P.2d 475, 480 (1983). GERS' consideration was the relinquishment of its contract claim for $21,138 under the penalty provision. Vancouver asserts that the penalty provision, which was the basis for GERS' contract claim, was per se illegal under Digidyne Corp. v. Data General Corp., 734 F.2d 1336 (9th Cir.1984), cert. denied, 473 U.S. 908 (1985), and therefore could not create a claim the relinquishment of which could serve as valid consideration. Huberdeau v. Desmarais, 79 Wash.2d 432, 486 P.2d 1074, 1078 (1971).
 
 
 24
 Vancouver overextends Digidyne. Nothing in Digidyne establishes that the penalty provision which GERS sought to enforce was absolutely and certainly an illegal tying arrangement. See Digidyne, 734 F.2d at 1343-44 (discussing penalty provision). Because the validity of GERS' contract claim was fairly arguable, the district court was not obligated to conclude as a matter of law that the agreement of accord and satisfaction failed for lack of consideration. The district court properly submitted the question of accord and satisfaction to the jury.[5]
 
 Costs
 
 25
 Vancouver objects to the district court's award of $6,495.75 costs to GERS for depositions. We review a district court's award of costs for an abuse of discretion. Maxwell, 862 F.2d at 770. Vancouver's argument is frivolous. The district court's award of costs for the deposition transcripts was appropriate if "all or any part of the stenographic transcript [was] necessarily obtained for use in the case." 28 U.S.C. § 1920(2). The depositions for which the costs were taxed were used in the cross-examination of witnesses or read directly to the jury. The transcripts were necessary to the case; therefore, the district court's award of costs was not an abuse of discretion. See Alflex Corp. v. Underwriters Laboratories, Inc., 914 F.2d 175, 177-78 (9th Cir.1990) (and cases cited therein), cert. denied, 112 S.Ct. 61 (1991).
 
 
 26
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 Vancouver does argue that GERS was an "expert," which would be relevant only to the foreseeability element of common law negligence. This argument does not establish the existence of a fiduciary relationship
 
 
 [2]
 Vancouver, relying on Klock v. Newbury, 63 Wash. 153, 114 P. 1032, 1034 (1911), argues that intentional misrepresentation and fraud consist of different elements. Klock does not make that distinction; rather, it discusses whether there is a requirement that fraud be shown before a contract will be rescinded for breach of warranty. Modern cases do not draw a distinction between intentional misrepresentation and fraud. See, e.g., Sprague v. Sumitomo Forestry Co., Ltd., 104 Wash.2d 751, 709 P.2d 1200, 1206 (1985) (citing Beckendorf v. Beckendorf, 76 Wash.2d 457, 457 P.2d 603 (1969), which involved common law fraud)
 
 
 [3]
 In light of our conclusions on Vancouver's negligence and fraud claims, we need not reach Vancouver's challenge to the district court's determination that Washington law applied to the question of the availability of punitive damages
 
 
 [4]
 The parties did not address the question of which state's law applies to the resolution of this issue. The district court applied Washington law to the non-federal issues. In the absence of an objection to applying Washington's law of accord and satisfaction, we look to Washington law. We note, nonetheless, that California and Washington have adopted essentially the same principles of accord and satisfaction and that the outcome would not differ were California law to be applied. See generally Calif.Civ.Code §§ 1521 (accord), 1522 (execution), 1523 (satisfaction)
 
 
 [5]
 The jury's special verdict finding accord and satisfaction of Vancouver's antitrust claim renders moot Vancouver's appeal of the district court's refusal to direct a verdict for Vancouver on its antitrust "tying" claim, the district court's jury instructions on antitrust damages, and the district court's limitation of the testimony of Vancouver's antitrust damages expert