**FIRST NATIONWIDE BANK, a Federal Savings Bank, a federal stock association, Plaintiff,**

v.

**GELT FUNDING, CORP., et al., Defendants.**

**No. 92 Civ. 0790 (MBM).**

United States District Court, S.D. New York.

April 9, 1993.

Roger B. Mead, Margaret E. Murray, Folger & Levin, San Francisco, CA, Robert M. Abrahams, Lynn E. Judell, Schulte Roth & Zabel, New York City, for plaintiff.

Lewis R. Clayton, Brian F. Havel, Mark A. Silberman, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Gelt Funding Corp., Allen I. Gross, Edith Gross, Solomon Werdiger, Esther Werdiger, 350 Sterling Associates, Brookhaven Realty Associates and 2608 Realty Associates.

Nathan Lewin, Miller, Cassidy, Larroca & Lewin, Washington, DC, Sara Moss, J. Jay Lobell, Howard, Darby & Levin, New York City, for defendant Ralph Herzka.

Irving P. Seidman, Lawrence H. Silverman, Allen L. Weintraub, Irving P. Seidman, P.C., New York City, for defendants 1261 Central Avenue Owners Corp., 36 Plaza Street Owners Corp., and Robert Wolf.

Robin Feingold Singer, Kramer, Levin, Nessen, Kamin & Frankel, New York City, for defendants New Heights (765 Riverside) Limited Partnership, New Heights (765 Riverside) Management Corp., New Heights (173–174) Ltd. Partnership, Temple Apartments Management Corp., and Crown Equities Ltd. Partnership.

Edward D. Fagan, Fagan & Associates, New York City, for defendants Shimon Eckstein and 505 Realty Associates.

Meir Unsdorfer, pro se.

Sheldon Rudoff, Mark S. Arisohn, James W. Johnson, Goodkind, Labaton Rudoff & Sucharow, New York City, for defendants David Malek, Peter Rebenwurzel, Adar Two Realty, 730 Realty Associates, 740 Realty Associates, and 2344 Davidson Associates.

Meir Rosenfeld, Rosenfeld & Maidenbaum, Cedarhurst, NY, for defendant Judah Wolf.

· Richard H. Dolan, Schlam, Stone & Dolan, New York City, for defendants 65–11 Realty Co., Aviezer Cohen, Elaine Cohen, 100 Realty Company, Esther Shur, and E. Philip Weingarten.

## OPINION AND ORDER

MUKASEY, District Judge.

Plaintiff First Nationwide Bank sues defendants Gelt Funding, Corp., *et al.*, under RICO, 18 U.S.C. § 1962, and state law. Plaintiff alleges that defendants fraudulently misrepresented the value of commercial properties and induced it to make non-recourse loans secured by those properties. In a previous opinion, familiarity with which is assumed, this Court granted defendants' motion to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6), subject to plaintiff's opportunity to replead. That opinion set forth the requirements for pleading RICO injury and proximate causation.

On December 23, 1992 plaintiff submitted a 174-page amended complaint with appendices (the "Amended Complaint"), alleging injury from "loans in amounts substantially greater than it would have made had it known the true value of the properties securing the loans and/or the borrowers' ability to service the loan debt," (Am.Compl. ¶ 10a) and from the adverse effects of loss reserves plaintiff took against those loans. (Am. Compl. ¶ 10b) Now defendants move to dismiss the Amended Complaint as well.

For the reasons stated below, defendants' motion is granted. Plaintiff has not alleged

actual injury from the additional amounts it loaned to defendants—in excess of the amount it would have loaned had it known the truth about defendants' alleged misrepresentations—other than loan losses themselves. Plaintiff may recover for those loan losses, if and when they occur, at law or in foreclosure actions in accord with RPAPL § 1301, but plaintiff cannot allege RICO injury now. Accordingly, for the reasons stated below, and because there is no other basis for federal jurisdiction, the complaint is dismissed.

## I.

Plaintiff's original claims are set forth fully in *First Nationwide Bank v. Gelt Funding, Inc.,* No. 92 Civ. 0790, 1992 WL 358759, 1992 U.S.Dist.LEXIS 18278 (S.D.N.Y. Nov. 30, 1992) (the "Opinion and Order"). That opinion held that plaintiff could not state RICO claims simply by alleging that defendants had induced plaintiff to lend money by falsely representing rental incomes and by concealing so-called "flip" transactions with other parties. Opinion and Order at 2, 4. More specifically, this Court held that plaintiff failed to plead adequately (1) "injury to business or property," and (2) proximate or loss causation. Opinion and Order at 4; *see* 18 U.S.C. § 1964(c); *Holmes v. Sec. Investor Protection Corp.,* —— U.S. ——, ——, 112 S.Ct. 1311, 1317, 117 L.Ed.2d 532 (1992); *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 23–24 (2d Cir.1990).

Plaintiff's Amended Complaint alleges two RICO violations (Am.Compl. ¶¶ 112–162) and state common law claims of fraud, conspiracy to defraud, negligent misrepresentation, conversion, conspiracy to convert, unjust enrichment, and breach of fiduciary duty. (Am. Compl. ¶¶ 163–172) Plaintiff's first RICO claim is against only defendants Gelt Funding Corp., Allen I. Gross, and Ralph Herzka. (the "Gelt Defendants") Defendant Gelt Funding was the mortgage broker for the loans in the Amended Complaint. (Am. Compl. ¶ 21) Defendant Gross was president of Gelt Funding and its principal shareholder. (*Id.* ¶ 22) Defendant Herzka was an officer and employee of Gelt Funding. (*Id.*) Plaintiff's second RICO claim is against all defendants including the Gelt Defendants and several defendant borrowers. (Am. Compl. ¶¶ 24–59)

In the Amended Complaint, plaintiff seeks to fill the gaps in its RICO claims by pleading two additional kinds of injury. First, plaintiff claims that it

made loans in amounts substantially greater than it would have made if it had known the true value of the properties securing the loans and/or the borrowers' ability to service the loan debt, resulting in losses [which] were not the proximate result of any general decline in the New York real estate market.

(Am.Compl. ¶ 10a) For each of the 30 loans described in the Amended Complaint, plaintiff estimates the actual value of the loan property in order to determine, based on certain lending criteria, what it would have loaned against that property value and what it would have lost had it made such a loan. (Am.Compl. ¶ 70(1)–(3)) Then plaintiff compares that hypothetical loss with its actual losses to determine what portion of its injury is attributable to defendants' fraud. (Am. Compl. ¶ 70(4)) Plaintiff alleges that defendants overstated the gross income of properties on average by 31%, and that consequently plaintiff loaned at least 64% more than it would have loaned had it known the truth. (Am.Compl. ¶ 69) Thus, plaintiff alleges injury from these additional amounts of loans to defendants.

Second, plaintiff claims that its

ability to lend money to others has been adversely affected by the fact that [it] has been required to place in reserve amounts roughly equal to the outstanding principal balance of the defaulted Gelt loans less the estimated current value of the properties securing those loans....

(Am.Compl. ¶ 10b) To support this claim, plaintiff estimates the reserves against loan losses it would have taken had it made loans based on truthful information, and compares the annual loss it would have incurred as a result of divesting assets and liabilities to take those reserves, with the actual loss it incurred from reserves it took against loans that were based on allegedly false information. (Am.Compl. 70(5)–(8)) Thus, plaintiff

alleges injury from the consequences of the additional sums loaned to defendants.

It appears from the papers that the illustrative example in the previous opinion, *see* Opinion and Order at 11–12, helped the parties to focus on certain issues. Therefore, as a preliminary matter, it may be useful to extend that example based on the additional allegations in the Amended Complaint, as follows: Suppose that Bank lends $100 to Borrower based on Borrower's misrepresentations. The loan is secured by a mortgage on Borrower's property. Following a local real estate market collapse, Borrower's property declines in value. Borrower defaults on the loan, and Bank sues, alleging RICO violations. Bank demonstrates that had it known the truth about the matters Borrower misrepresented, Bank would have loaned only $50. Because Bank would have loaned $50 to Borrower even if it had known the truth, Bank's claim as to the first $50 would be dismissed—for the same reasons plaintiff's claims were dismissed in the previous opinion. However, Bank claims that its injury arises also from (1) the additional $50 which it loaned, and (2) the lost profits from taking additional required reserves. These additional claims relate only to injury from additional amounts loaned, not from the decision to lend in the first place. The holding in this opinion, in terms of this hypothetical example, is that Bank's first additional claim fails because Bank does not allege any injury beyond that resulting from the actual loan, *i.e.*, beyond simply the amount of the loan attributable to untruthful information, and the second additional claim fails because the Bank alleges neither injury nor proximate causation under RICO.

## II.

The previous Opinion and Order dismissed plaintiff's claims with respect to the nine loans in the original complaint on which borrowers had already defaulted, because New York's "one action" rule prevents plaintiff from seeking to enforce rights upon default by pursuing a legal remedy and an equitable remedy at the same time. RPAPL § 1301 ("Section 1301"); *see* Opinion and Order at 5–6 (citing cases). Plaintiff's "streamlined"

complaint contains fewer loans that are in default. (Def.Mem. at 10; Pl.Mem. at 21) With respect to loans in default, plaintiff argues that the Amended Complaint contains allegations in addition to and separate from claims relating to any foreclosure action on the loans at issue, or from any claims at law or equity on the debt itself. Plaintiff alleges that its "success or failure in pending foreclosure actions ... will affect only the quantification of [its] damages, not the fact of its injury." (Pl.Mem. at 20)

■ The new allegations in the Amended Complaint—which stem from the additional amounts plaintiff alleges it would not have loaned had it known the truth—are no different from the allegations in the original complaint. The reasoning in the previous Opinion and Order applies to those allegations as well:

> the Bank cannot allege RICO injury if damages depend on the failure of its foreclosure actions. If the Bank successfully forecloses on the [loans in default], it will not sustain any injury from those loans—under RICO or otherwise. RICO injury cannot be contingent upon the instigation or outcome of related litigation.

Opinion and Order at 6 (citing *Anitora Travel, Inc. v. Lapian*, 677 F.Supp. 209, 216 (S.D.N.Y.1988)).

Section 1301, a New York law, does not limit the reach of RICO, but it supports the rule that a party may not sue under RICO to recover on a defaulted loan and, at the same time, foreclose on the loan. *See* Opinion and Order at 6. Section 1301 prohibits any party from commencing an action "to recover any part of the mortgage debt, without leave of court," when another action on the same mortgage "is pending or [has reached] final judgment." RPAPL § 1301(3); *see FDIC v. Home Savings Bank*, 1993 WL 41818, 1993 U.S.Dist.LEXIS 1988 (E.D.N.Y. Feb. 4, 1993) (to the extent suit for fraud was based on mortgage debt, suit was barred by Section 1301); *but see Dollar Dry Dock Bank v. Piping Rock Builders, Inc.*, 181 A.D.2d 709, 710, 581 N.Y.S.2d 361 (2d Dep't 1992) (Section 1301 not a bar to a fraudulent conveyance action because "the subject matter of the fraudulent conveyance action is a differ-

94

ent parcel than those that are the subject matter of the foreclosure action"). As Judge Raggi held recently in *FDIC v. Home Savings Bank,* "[i]n essence, Section 1301 forces a mortgagee into an election of remedies between, on the one hand, an action in equity for foreclosure, in which a deficiency judgment may then also be sought, or, on the other hand, an action at law on the debt." 1993 WL 41818, at *4, 1993 U.S.Dist.LEXIS 1988, at *14–15 (citing cases). Accordingly, plaintiff's allegations relating to loans already in default are dismissed.

■ With respect to loans in the Amended Complaint that are not in default, plaintiff has not satisfied the rule that a "plaintiff will only have standing if it alleges the existence of an actual, present injury, not some speculative injury that might only possibly occur in the future...." *Anitora Travel v. Lapian,* 677 F.Supp. at 216 (citing cases). Although plaintiff has alleged that the default rate on its loans to defendants was higher than the default rate on other loans (Am.Compl. ¶ 6), that fact alone does not generate a RICO claim. In its original complaint plaintiff alleged harm from possible future defaults and the adverse impact of actual and threatened defaults on its ability to lend, neither of which is compensable under RICO. Opinion and Order at 5. To the extent the Amended Complaint continues to allege that kind of injury, it fails to state a claim. The additional allegations of injury in the Amended Complaint—arising from (1) additional amounts plaintiff was induced to lend, and (2) loan loss reserves relating to those additional amounts—do not satisfy RICO's pleading requirements either, as described below.

As to the first type of injury, plaintiff argues that it was injured "at the time [it] made the loans, resulting from the fact that [it] received much less security for the repayment of its advances (and assumed much greater risks) than [it] was led to believe." (Pl.Mem. at 6) In other words, plaintiff pleads injury stemming from additional risks it assumed on the day it funded each of the allegedly fraudulent loans.

This novel theory of injury, based on plaintiff's assumption of "additional risk"—other than default risk—is not only incorrect, but

is also a prescription for ceaseless litigation. According to plaintiff's argument, a claimant could recover under RICO for "additional risk" it unknowingly assumed on a loan, even if the loan was repaid. I was momentarily dismayed to see that plaintiff's authority for this theory was my own decision in *U S West Fin. Servs. v. Marine Midland Realty Credit Corp.,* 810 F.Supp. 1393 (S.D.N.Y.1993), an opinion which dealt with "benefit of the bargain" damages in an unusual breach of contract case, and which is irrelevant here.

*U S West* dealt with contract damages where what was bargained and paid for was one risk, and what was delivered was another. That opinion has nothing to do with fraud damages. Moreover, the Second Circuit has rejected plaintiff's approach in fraud actions. *See Ostano Commerzanstalt v. Telewide Systems, Inc.,* 794 F.2d 763, 766 (2d Cir.1986), *on remand* 684 F.Supp. 1172 (S.D.N.Y.1988), *mod. remanded,* 880 F.2d 642 (2d Cir.1989). To the extent *Sigman v. Stevens–Norton, Inc.,* 70 Wash.2d 915, 425 P.2d 891 (1967) stands for the proposition that a plaintiff lender may recover in fraud for additional risk incurred at the time of a loan, I respectfully decline to follow that holding. Consistent with the Opinion and Order, plaintiff cannot allege RICO injury arising from additional risks it assumed at the time it loaned money, while at the same time retaining the ability to be made whole by realizing on the loan collateral prior to default. Again, mere speculation that some injury might occur is insufficient to state a civil RICO claim. *See Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1104 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989).

The second type of damage plaintiff seeks is "for the ongoing injury to its overall business resulting from the fact that the losses on the fraud-induced loans have impaired [its] capital, constraining its operations and earnings." (Pl.Mem. at 25) In a nutshell, plaintiff's argument (Pl.Mem. at 26–28) is that when it discovered defendant's fraudulent loans, it was required to write off the loans or take a special reserve against the loans, either of which reduced plaintiff's assets and capital. Then, in order to maintain

its required minimum capital ratio, plaintiff had to shrink its assets and liabilities by selling loans and consumer savings accounts, thereby diminishing its earnings. Thus, plaintiff alleges injury from the date it took additional reserves until the date it recovers any loss on the loans, if ever. Plaintiff claims that "[t]his is precisely the sort of injury that RICO was intended to remedy," (Pl.Mem. at 28)

■ Plaintiff has not stated a RICO claim relating to this second type of injury. This remote injury is not "precisely the sort of injury that RICO was intended to remedy.". Even accepting plaintiff's argument that "[c]onsistent with the broad remedial purpose of RICO, there is no single appropriate measure of damages," (Pl.Mem. at 34) the second type of injury does not meet RICO's pleading requirements. Civil RICO damages "are unrecoverable if the fact of their accrual is speculative or their amount and nature unprovable." *Bankers Trust Co. v. Rhoades,* 859 F.2d 1096, 1104 (2d Cir.1988), *cert. denied,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989). "A plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985).

■ Plaintiff alleges that because it "is required to take a specific reserve for the actual losses incurred on an individual loan," (Pl.Mem. at 30) its losses are neither speculative nor unprovable. In deciding whether a party may recover lost profits for RICO violations, a court should look to "appropriate common law remedies in the forum state." *Shulton, Inc. v. Optel Corp.,* 698 F.Supp. 61, 62 (D.N.J.1988); *see also Sound Video Unlimited, Inc. v. Video Shack Inc.,* 700 F.Supp. 127, 141–42 (S.D.N.Y.1988) (applying Illinois law, which allows recovery of lost profits in fraud cases); *DeMent v. Abbott Capital Corp.,* 589 F.Supp. 1378, 1386 (N.D.Ill.1984) (same); *AAMCO Transmission, Inc. v. Marino,* 1992 WL 38120, at. *4–5, U.S.Dist.LEXIS 2081, at *16, 20 (E.D.Pa. Feb. 20, 1992) (applying Pennsylvania law, which allows recovery of lost profits in fraud cases). New

York law expressly prohibits recovery of "lost profits" in fraud actions, and plaintiff's RICO claims—which sound almost exclusively in fraud—cannot include a claim for "lost profits." *See, e.g., AFA Protective Sys., Inc. v. American Tel. & Tel. Co.,* 57 N.Y.2d 912, 456 N.Y.S.2d 757, 442 N.E.2d 1268 (1982); *Reno v. Bull,* 226 N.Y. 546, 124 N.E. 144 (1919). Nevertheless, plaintiff argues that New York courts have allowed recovery of certain consequential damages in fraud cases where the additional damage was, as plaintiff's note, a "direct pecuniary loss." (Pl. Mem. at 34) *See, e.g., Cayuga Harvester v. Alice Chalmers Corp.,* 95 A.D.2d 5, 23, 465 N.Y.S.2d 606, 618 (1983); *Morris v. Lewis,* 75 A.D.2d 844, 427 N.Y.S.2d 858 (1980).

■ Although it is not clear whether and when a plaintiff in federal court in New York may recover lost profits for a RICO claim which is predicated on fraud, plaintiff's second type of injury is not a "direct pecuniary loss," That plaintiff was required to take reserves against loan losses reveals little about plaintiff's actual loss, or even whether plaintiff's assessment of the loan losses was correct. Plaintiff cannot allege RICO injury simply by stating that it followed a statutory requirement in connection with a transaction that may result in a loss. Plaintiff cannot recover every additional expense it can think of by alleging that it incurred that expense while following rules and guidelines. If a loan does not itself result in a provable loss, plaintiff cannot recover expenses incurred in a transaction that may turn out no worse than it would have if the underlying information had been truthful. To put the matter more starkly, expenses incurred in making a profit do not become fraud damages simply because the transaction would not have been entered into had the truth been known. Moreover, the taking of loan loss reserves is based on managerial guesswork about the future economic fortune of a commercial real estate loan portfolio—guesswork that includes, at minimum, an assessment of the amount of the loan that may be lost due to fraud, as well as the capacity of the loan collateral to generate cash flow over time, a capacity that in turn depends on the economics of the real estate market. Plaintiff can-

not survive a motion to dismiss by alleging novel and speculative compensatory damages that may or may not arise from fraud.

In addition to the indirectness of injury caused by taking additional reserves, such injury may have been unnecessary. As defendants point out and plaintiff admits (Pl. Mem. at 27 n. 15; Am.Compl. ¶ 17), plaintiff had two options to maintain its minimum required capital: (1) shrinking itself through divestment, which it did and which caused its alleged lost profits, or (2) enlarging itself through infusions of equity capital, which it did not. Apparently, plaintiff chose to shrink because it was unsure of its ability to profit from new loans. Defendants argue that plaintiff had a duty to pursue the second option, an infusion of equity capital, under the "doctrine of avoidable consequences"—a rule that a tort victim must take reasonable measures to avoid the consequences of another's wrongdoing. (Def. Reply at 19 n. 7) *See, e.g., Jenkins v. Etlinger,* 55 N.Y.2d 35, 447 N.Y.S.2d 696, 432 N.E.2d 589 (1982). Plaintiff argues that this doctrine does not apply here. (Pl.Mem. at 27 n. 16) However, even if plaintiff had no duty to pursue the second option, the availability of another option suggests that the injury arising from the loan loss reserves was speculative. As stated above, civil RICO damages "are unrecoverable if the fact of their accrual is speculative or their amount and nature unprovable." *Bankers Trust Co. v. Rhoades,* 859 F.2d at 1104. Although plaintiff was required to maintain a minimum capital ratio, plaintiff was not required to take loan loss reserves. In other words, plaintiff might not have suffered injury from taking the reserves if it had pursued an infusion of equity capital instead. That plaintiff could have avoided such injury is additional proof that the injury was speculative.

For the above reasons, plaintiff has not alleged RICO injury with respect to the loan loss reserves.

### III.

■ The prior Opinion and Order dismissed plaintiff's claims also because plaintiff failed to allege proximate or "loss" causation. *See* Opinion and Order at 9–20; *Hecht v.*

*Commerce Clearing House, Inc.,* 897 F.2d 21, 23–24 (2d Cir.1990). This Court applied the more specific rule that

a borrower who misstates the value of loan property or its rental income proximately causes injury to a bank when (1) the misrepresented value of the property was substantially above its actual value at the time of the misrepresentation, (2) the injury was sustained soon after the misrepresentation, and (3) external factors did not contribute to the injury.

Opinion and Order at 11 (citing *Finkel v. Stratton Corp.,* 754 F.Supp. 318 (S.D.N.Y. 1990)). The above rule applies when a borrower misrepresents facts to a bank, and the bank alleges injury because those facts induced it to make a loan. Although this plaintiff has indicated that the misrepresented values of the loan properties were greater than their actual values, plaintiff did not sustain injury until five years after it began lending to and through defendants, and the real estate market collapse coincided with plaintiff's injury. Therefore, to the extent this plaintiff continues to allege injury solely because it was induced to make loans to defendants, plaintiff continues to fail the above test.

■ In addition, for the reasons stated in the previous Opinion and Order, the allegations stemming from additional loan loss reserves do not satisfy the Second Circuit's "loss causation" requirements. *See* Opinion and Order at 9–20 (citing cases). The taking of loan loss reserves is an inherently speculative and unreliable measure of actual damages because reserves do not represent realized losses, but rather a contingent estimate of anticipated future losses.

■ On the other hand, plaintiff has satisfied the more general proximate causation test in this Circuit with respect to the first type of injury it alleges—relating to additional amounts plaintiff loaned to defendants. According to the two-pronged test in *Hecht v. Commerce Clearing House, Inc.,*

the RICO pattern or acts proximately cause a plaintiff's injury if they are a substantial factor in the sequence of responsible causation, and if the injury is reason-

ably foreseeable or anticipated as a natural consequence.

897 F.2d at 23–24. *See also Ceribelli v. Elghanayan,* 990 F.2d 62, 65 n. 3 (2d Cir. 1993) (citing *Holmes v. Sec. Investor Protection Corp.,* —— U.S. at —— – ——, 112 S.Ct. at 1316–18; *Manufacturers Hanover Trust Co. v. Drysdale Sec. Corp.,* 801 F.2d 13, 20–22 (2d Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987)). Although the alleged misrepresentations were not a "substantial factor in the sequence of responsible causation" with respect to losses from the loans generally, *see Citibank, N.A. v. K–H Corp.,* 968 F.2d 1489, 1495 (2d Cir. 1992), the alleged misrepresentations ·were *the* factor that contributed to any losses from the additional amounts loaned ·by plaintiff. Conversely, although the real estate market collapse may have "caused" the injury which · resulted from plaintiff's decision to lend to defendants—with the corresponding result that defendants' misrepresentations did not "cause" such injury—*see* Opinion and Order at 14, the market collapse did not "cause" that injury which the Amended .Complaint alleges resulted dollar for dollar from additional amounts plaintiff loaned to defendants. The injury from those additional amounts was not merely "reasonably foreseeable"—it was inevitable—as a natural consequence of defendants' alleged misrepresentations. Although courts in the Second Circuit are skeptical of claims made in the wake of market declines, neither do courts sanction the use of coincidental market declines to escape liability. *See, e.g., K–H Corp.,* 968 F.2d at 1497; *Finkel v. Stratton Corp,* 754 F.Supp. at 330.

However, plaintiff cannot survive defendants' motion to dismiss simply by pleading proximate causation relating to the additional loan amounts in the Amended Complaint. Plaintiff's claims cannot survive, because plaintiff has not alleged facts which, if established, would prove RICO injury based on the additional loan amounts, as described above.

### IV.

■ Plaintiff's second RICO claim—against the Gelt Defendants and against the borrowers—must be dismissed for an addi-·

tional reason: it does not plead adequately the existence of an "enterprise" among all defendants, as required by 18 U.S.C. § 1961(4). Plaintiff's second RICO claim differs from its first RICO claim only in that it includes all· defendants, not just the Gelt Defendants. Plaintiff's allegations of an "enterprise" with respect to all defendants are contained in paragraphs 125–27 of the Amended Complaint:

> at various times as early as 1985, and possibly earlier, through at least 1990, Gelt,· Gross, Herzka, and all the other defendants were associated in fact for the common purpose, among others, of defrauding First Nationwide through the loan transactions described in this complaint and other means. This association in fact was an "enterprise" (the "Borrower Enterprise") as that term is defined in 18 U.S.C. § 1961(4). [Plaintiff] alleges that Gelt, Gross, and Herzka, and all the other defendants were employed by or associated with the Borrower Enterprise.

(Am.Compl. ¶¶ 125–27) In essence, plaintiff alleges · simply that loan transactions occurred which involved one mortgage broker—defendant Gelt, and different borrowers, and labels this series of unrelated loans a "Borrower Enterprise." Here, plaintiff alleges a classic "hub and spoke" conspiracy, in which the Gelt Defendants were the "hub," and the various borrower defendants were the "spokes." That is not, properly speaking, a common law conspiracy. *See, e.g., Kotteakos v. United States,* 328 U.S. 750, 769, 66 S.Ct. 1239, 1250, 90 L.Ed. 1557 (1946).

However, as Judge Weinstein recognized, "[w]ith the enactment of RICO, Congress supplemented traditional 'chain' and 'wheel' theories with a new conspiratorial concept—the enterprise." *United States v. Gallo,* 668 F.Supp. 736, 747 (E.D.N.Y.1987); *see also United States v. Biaggi,* 672 F.Supp. 112, 119 n. 15 (S.D.N.Y.1987); *United States v. Elliott,* 571 F.2d 880, 900 (5th Cir.1978). A RICO "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *see,. e.g., Three Crown Ltd. Partnership v. Caxton*

*Corp.*, 817 F.Supp. 1033, 1045 n. 25, 1993 WL 74794, at *14 n. 25 (S.D.N.Y.1993); *Bogart v. Shearson Lehman Bros., Inc.*, No. 91 Civ. 1036, 1993 WL 33643, at *6, 1993 U.S.Dist.LEXIS 1182, at *17 (S.D.N.Y. Feb. 3, 1993); *United States v. Local 1804–1, Int'l Longshoremen's Assoc.*, 812 F.Supp. 1303, 1309 (S.D.N.Y.1993). The Supreme Court has held that a RICO "enterprise" is a "group of persons associated together for a common purpose of engaging in a course of conduct.... [It is] proved by evidence of an ongoing organization, formal or informal, and by any evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981); *see also Cullen v. Paine Webber Group, Inc.*, 689 F.Supp. 269, 273 (S.D.N.Y.1988) (clients of broker-plaintiffs did not constitute an "enterprise" "any more than would, for example, a stamp collection").

Courts in the Second Circuit must look to the "hierarchy, organization, and activities" of an association-in-fact to determine whether "its members functioned as a unit." *United States v. Coonan*, 938 F.2d 1553, 1560–61 (2d Cir.1991). For an association of individuals to constitute an "enterprise," the individuals must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Moll v. U.S. Life Title Ins. Co.*, 654 F.Supp. 1012, 1031 (S.D.N.Y.1987) (citing cases). For example, in *Moll v. U.S. Life*, Judge Leisure dismissed, with leave to amend, a complaint that alleged that members of an "enterprise" provided real estate settlement services to purchasers of real estate and received kickbacks, because the complaint did not "specify how these members joined together as a group to achieve these purposes," and did not include "factual allegations regarding the continuity of structure or personnel of this group." *Moll v. U.S. Life Title Ins.*, 654 F.Supp. at 1032.

Plaintiff has not specified how all defendants, including various borrowers, joined together as a group to perpetrate the frauds alleged in the Amended Complaint. Plaintiff has not pleaded any facts regarding the continuity of structure or personnel of the "Borrower Enterprise." Plaintiff merely asserts that for over six years defendants shared common fraudulent purposes and plans. Conclusory allegations that disparate parties were associated in fact by virtue of their involvement in the real estate industry in the 1980s are insufficient to sustain a RICO claim, absent allegations as to how the members were associated together in an "enterprise." Nor does common sense support the existence of such an "enterprise." Rather, it appears at worst that several borrowers each committed a similar but independent fraud with the aid of a particular lender, and that each such borrower acted on a particular occasion to benefit himself or herself and not to assist any other borrower. That series of discontinuous independent frauds is no more an "enterprise" than it is a single conspiracy. *Cf. Kotteakos, supra.* Accordingly, plaintiff's second RICO claim against all defendants is dismissed.

## V.

Finally, defendants have challenged plaintiff's claims on several other grounds, including failure to comply with Fed.R.Civ.P. 9(b) and failure to satisfy certain pleading elements of RICO and common law. Plaintiff claims that this "Court has already disposed of the defendants' other challenges to the Amended Complaint." (Pl.Mem. at 56) That is incorrect. Plaintiff complains that "[f]ully 75% of the briefing on the prior motions was devoted to these matters. But in its Opinion and Order of November 30, 1992, the Court concluded that the original complaint was deficient in only two regards...." (*Id.*) Because the Opinion and Order did not address those other matters at all, it held that the original complaint was deficient in *at least* two regards—failure to plead RICO injury and proximate cause. Nevertheless, because plaintiff continues to fail to satisfy those two basic pleading requirements of RICO, I need not address additional matters.

In sum, plaintiff has not pleaded facts that give this Court jurisdiction to explore plaintiff's roundhouse assertion "that this case involves one of the most stunning and massive instances of white-collar crime and bank

fraud in recent history, involving over $100 million in losses." (Pl.Mem. at 1) Accordingly, plaintiff's claims are dismissed.

SO ORDERED.