UNITED STATES of America, Appellee,

v.

Richard STOLFI and Frank Casalino, Defendants–Appellants.

Nos. 121, 122, Dockets 89–1120, 89–1121.

United States Court of Appeals, Second Circuit.

Submitted Sept. 15, 1989.

Decided Nov. 6, 1989.

Frank A. Lopez, New York City, for defendant-appellant Richard Stolfi.

William Lupo, Brooklyn, N.Y. (Jane K. Falcon, Brooklyn, N.Y., of counsel), for defendant-appellant Frank Casalino.

Viktor V. Pohorelsky, David E. Brodsky, Asst. U.S. Attys. for the S.D.N.Y., New York City (Benito Romano, U.S. Atty. for the S.D.N.Y., of counsel), for appellee.

Before WINTER, MINER and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

Appellants Richard Stolfi and Frank Casalino, officers of Local 875 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("Local 875"), were convicted of, *inter alia,* violating and conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c) and (d), and aiding and abetting extortion in violation of the Hobbs Act, 18 U.S.C. §§ 1951 and 2. Appellants argue that they were entitled to a "multiple enter-

prise" instruction with regard to the RICO charges and that the evidence on the Hobbs Act charge was legally insufficient. We affirm.

## BACKGROUND

This case involves the criminal activities of officers of the Teamsters Union in their dealings with the Wedtech Corporation. After Wedtech's management learned of discussions of unionization among Wedtech employees, the company became fearful that the employees would select a union that would engage in arm's-length bargaining. A principal shareholder and officer of Wedtech had previously dealt with Local 875 in his capacity as the owner of a machine shop in the Bronx and was confident that he could develop a collusive relationship with it. Soon thereafter, in April 1977, Wedtech recognized Local 875 and signed a collective agreement that, *inter alia*, required Wedtech to make contributions to the union's welfare benefit fund, the Louis Hirsch Memorial Welfare Fund ("Fund").

As officers of Local 875, Stolfi and Casalino were responsible for negotiating with Wedtech on behalf of the Wedtech employees and the Fund. Local 875 and the Fund also shared offices, and the evidence showed that appellants had influence over the operation of the Fund. Wedtech realized the value of a good relationship with Stolfi and Casalino and for a period of years made monthly cash payments of $5,000 to them. In return, Wedtech enjoyed relative freedom from labor disputes and was even able to use non-union labor on some projects, causing a reduction in contributions to the Fund. In 1983, Wedtech also paid the appellants $25,000 for negotiating what Wedtech officers considered a "viable" collective bargaining agreement after the unionized Wedtech employees exhibited dissatisfaction with their less-than-aggressive bargaining representative. Finally, Wedtech was threatened by Local 17 of the Brotherhood of Carpenters and Joiners ("carpenters' local") with work stoppages and violence as a result of the use of non-union labor. Stolfi and Casalino made their good offices available to aid Wedtech in its difficulties with the carpenters, and Wedtech gave appellants $100,000 to pay off the carpenters' local, which thereafter ceased its threatening behavior. In addition, Stolfi embezzled money from the Fund through a false insurance claim and kickbacks from the purchase of real and fictitious dental equipment by a Fund dentist.

In 1988, Stolfi and Casalino were charged in an eleven-count indictment. The charges pertinent to this appeal were a RICO violation and RICO conspiracy in conjunction with the Wedtech payoffs. The RICO charges against Stolfi also included embezzlement and receipt of kickbacks from the Fund as predicate crimes. Also pertinent to the appeal was a Hobbs Act count involving the extorted $100,000 payoff that resolved the dispute with the carpenters' local.

## DISCUSSION

RICO Section 1962(c) makes it unlawful for "any person employed by or associated with any enterprise" to conduct or participate in the conduct of the enterprise's affairs through "a pattern of racketeering activity." The indictment in this case alleged that the RICO "enterprise" was composed of Local 875 and the Fund, and the jury specifically found that the RICO enterprise had been established as alleged.

■ Appellants' sole challenge to their RICO convictions is that they were entitled to an instruction advising the jury that it should consider their contention that Local 875 and the Fund constituted two separate enterprises rather than the single enterprise charged in the indictment.[1] Judge

---

1. The appellants' requested instruction read:

The government contends that Local 875 *and* the Louis Hirsch Memorial Welfare Fund (the "Welfare Fund") constitute a single enterprise as that term is defined by the applicable statute.

The defense contends that the Welfare Fund, a multi-employer fund which is maintained and run jointly by duly nominated representatives of the contributing employers and the union, is an entity distinct and apart from the union, and, as such, the defendants contend that Local 875 and

Mukasey declined to offer that instruction and charged the jury:

> If you find beyond a reasonable doubt that Teamsters Local 875 and the Welfare Fund did in fact exist during the period covered in Count One, and that they and any defendant you may find associated with them functioned as a continuing, ongoing organization, you may find that an enterprise existed and that the first element has been satisfied.

RICO Section 1961(4) defines an enterprise to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Appellants argue by analogy to cases involving multiple conspiracies, *see United States v. Cambindo Valencia*, 609 F.2d 603, 625 (2d Cir.1979), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 795 (1980), that a "multiple enterprise" charge is required where more than one enterprise might be inferred from the evidence. The analogy, however, is incorrect.

The gravamen of a conspiracy charge is an agreement by two or more persons to commit a crime, and the government must of course prove the particular agreement charged in the indictment. Where the evidence might allow a jury to find multiple criminal conspiracies, the jury must be instructed that unless the particular conspiracy charged has been proven, the defendants must be acquitted, notwithstanding evidence of other conspiracies. Such an instruction is appropriate to guard against a jury's convicting defendants of uncharged conspiracies or conspiracies in which they were not involved because of a "spillover" effect.

■ The fact that the evidence in a RICO prosecution may reveal a number of entities capable of falling within RICO's virtually limitless definition of enterprise presents a rather different issue. We have held that a racketeering enterprise may consist of an association of separate legal entities. *See United States v. Huber*, 603 F.2d 387, 393–94 (2d Cir.1979) (group of corporations can be a RICO enterprise), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). We also believe that entities that are separate and distinct enterprises for some purposes may jointly be an enterprise for RICO purposes where they have been connected by a defendant's participation in them through a pattern of racketeering activity.

A RICO enterprise is thus distinguishable from a criminal conspiracy in that it has cumulative aspects, whereas separate and distinct conspiratorial agreements must be charged and proven individually. Local 875 and the Fund may often have functioned as separate and distinct organizations and may have been capable of being separate enterprises for RICO purposes. That does not, however, preclude a finding that Local 875 and the Fund were jointly a RICO enterprise where appellants connected them by participating in them through a pattern of racketeering activity. If anything, the instruction requested by appellants was somewhat more favorable to the government than that given by Judge Mukasey because appellants' request would have allowed a conviction upon a finding that Local 875 and the Fund were

---

the Welfare Fund do not constitute one single enterprise as that term is defined in the statute I shall now read to you.

"'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. Sect. 1961(4).

It is for you to determine whether Local 875 and the Welfare Fund constitute a single enterprise or whether the Welfare Fund constitutes a separate and distinct enterprise from that of the union, that is Local 875.

If you find that the Welfare Fund and Local 875 are two separate and distinct enterprises, then before you can find that the defendant you are considering conducted or participated in the affairs of Local 875 and the Welfare Fund through a *pattern of racketeering activity* (as I have defined that term) you must find that as to *each enterprise* the defendant you are considering committed two acts of racketeering related by some common plan, scheme or motive or that he had knowledge that they were part of the ongoing illegal conduct of that enterprise and that he committed them with the intention of furthering the objects of that particular enterprise.

(emphasis in original) (footnote omitted).

separate and distinct enterprises so long as the appellants participated in each through the requisite pattern. *See* Note 1, *supra.* The instruction actually given required a finding that Local 875 and the Fund were together an enterprise. We do not address the propriety of the proposed instruction insofar as it favored the government.

Moreover, so long as the jury is clearly instructed, as it was here, that it must find that the entities charged in the indictment are an enterprise as defined in RICO, we perceive little danger that a jury will convict defendants of uncharged crimes or crimes in which they were not involved. At least where the various entities are not inherently criminal organizations, a defendant's participation in them is not by itself a crime. Rather, that participation becomes a crime only when it involves a pattern of racketeering activity. *See United States v. Russotti,* 717 F.2d 27, 33 (2d Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1273, 79 L.Ed.2d 678 (1984). Because evidence concerning the existence of the entities cannot by itself result in prejudicial spillover, the potential for jury confusion that exists when multiple criminal conspiracies are disclosed does not arise where multiple legitimate enterprises are alleged to constitute a larger RICO enterprise. We of course do not address the very different question that would arise if multiple inherently criminal enterprises, such as two organized crime families, were involved.

Appellants also argue that the government failed to prove that their receipt of payments from Wedtech to prevent disruption by the carpenters' local constituted aiding and abetting of a Hobbs Act violation. The argument is baseless. Extortion through threats of economic loss from violence or work stoppages falls within the Hobbs Act's prohibitions, *see United States v. Robilotto,* 828 F.2d 940, 944–45 (2d Cir.1987), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 711, 98 L.Ed.2d 662 (1988), and such extortion was shown in the instant case. Wedtech reasonably believed "first, that the [carpenters' local] had the power to harm [Wedtech], and second, that the [local] would exploit that power to [Wed-

tech's] detriment." *United States v. Capo,* 817 F.2d 947, 951 (2d Cir.1987) (in banc); *see also United States v. Covino,* 837 F.2d 65, 68 (2d Cir.1988). The instant case is, therefore, not like *Capo,* where the victims made payments, not to avoid a threatened loss, but only to improve their chances of obtaining a benefit. *Cf.* 817 F.2d at 950–54.

It is of course true that Wedtech feared the pertinent harm not from appellants but from the carpenters' local. However, to prove aiding and abetting, the government need show only that appellants "associated themselves" with the carpenters' criminal venture, participated in it as something that they wished to bring about, or sought by their action to make it succeed. *See United States v. Clemente,* 640 F.2d 1069, 1078–79 (2d Cir.), *cert. denied,* 454 U.S. 820, 102 S.Ct. 102, 70 L.Ed.2d 91 (1981); *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938). The evidence was more than sufficient to make that showing. Appellants conducted the negotiations leading to the payoff and transmitted it for the express purpose of avoiding the threatened harm to Wedtech. This knowing participation as intermediaries is more purposeful than the participation of the "steerer" in *Clemente,* who merely advised the victim concerning a payoff. *See* 640 F.2d at 1073. Because Stolfi and Casalino unmistakably sought to make the extortionate scheme succeed, the fact that they did not share in the $100,000 is irrelevant. *See Clemente,* 640 F.2d at 1079–80.

Affirmed.