**BLUE CROSS OF CALIFORNIA et al., Plaintiffs,**

v.

**SMITHKLINE BEECHAM CLINICAL LABORATORIES, INC., Defendant.**

Sarah J. Clark and Ronald S. Schwartzman, individually and on behalf of all others similarly situated; Plaintiffs,

v.

Smithkline Beecham Clinical Laboratories, Inc., Defendant.

David Watkins and Mary Gallardo, Plaintiffs,

v.

Smithkline Beecham Clinical Laboratories, Inc., Defendant.

Nos. Civ. 3:97CV1795 AVC, Civ 3:97CV1835 AVC and Civ. 3:97CV2052 AVC.

United States District Court, D. Connecticut.

June 11, 1998.

John Burns Farley, Daniel P. Scapellati, Halloran & Sage, Hartford, CT, Thomas W. Brunner, Laura A. Foggan, C. Russell Clause, Eric Mahr, Nicole Telecki, Kirk J. Nahra, David O. Ferry, Clifford M. Sloan, Rand L. Allen, Russell D. Duncan, Wiley, Rein & Fielding, Washington, DC, Marc M. Seltzer, Susman Godfrey LLP, Los Angeles, CA, Alison M. Duncan, David L. Douglass, Thomas O. Gorman, Heather J. Stewart, Porter, Wright, Morris & Arthur, Washington, DC, for Blue Cross of CA, et al., plaintiffs.

Eliot B. Gersten, Gersten & Clifford, Hartford, CT, C. Russell Clause, Eric Mahr, Nicole Telecki, Kirk J. Nahra, David O. Ferry, Clifford M. Sloan, Rand L. Allen, Russell D. Duncan, Wiley, Rein & Fielding, Washington, DC, Thomas O. Gorman, Heather J. Stewart, Porter, Wright, Morris & Arthur, Washington, DC, for Ronald S. Schwartzman, plaintiff.

MDL Panel, Patricia D. Howard, MDL Clerk, Washington, DC, notice only, pro se.

Thomas O. Gorman, Heather J. Stewart, Porter, Wright, Morris & Arthur, Washington, DC, for Blue Cross Plaintiff, plaintiff.

Thomas O. Gorman, Heather J. Stewart, Porter, Wright, Morris & Arthur, Washington, DC,, for Class Plaintiffs, plaintiff.

Lisa Kovacs Anderson, Nair & Levin, P.C., Bloomfield, CT, Robert S. Schachter, Catherine E. Anderson, Joseph Lipofsky, Robert S. Schachter, Zwerling, Schachter & Zwerling, New York City, Richard Bemporad, Richard B. Dannenberg, Sherrie Brown, Lowey, Dannenberg, Bemporad & Selinger, White Plains, NY, Robert F. Shea, Jr., New Britain, CT, Jay F. Malcynsky, New Britain, CT, Marc M. Seltzer, Richard B. Drubel, Boies & Schiller, Hanover, NH, for Mary Gallardo, David Watkins, consolidated plaintiffs.

Eliot B. Gersten, Gersten & Clifford, Hartford, CT, Marc R. Stanley, Michelle Heron Galindo, Stanley, Mandel & Iola, Dallas, TX, for Sarah J. Clark, consolidated plaintiff.

A. Hoyt Rowell, III, Richard L. Akel, Ness, Motley, Loadholt, Richardson & Poole, Charleston, SC, Thomas N. Crawford, Jr., Joe R. Whatley, Jr., Glen Marshall Connor, Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, AL, Kenneth Ingram, Jr., Morris, Haynes, Ingram & Hornsby, Alexander City, AL, Mitchell A. Toups, Weller, Green, McGowin & Toups, Beaumont, TX, Arthur Sherman, Sherman, Dan & Portugal, Beverly Hills, CA, Mike Hackard, Hackard, Holt & Heller, Gold River, CA, William H. Garvin, III, Weller, Green, McGown & Toups, Tallahassee, FL, for Robert Washington, Health & Welfare, Teamsters Natl CA Gen Security Fund, Carpenters Local, Ralph Parker, Annie Robbins, Dorothy Griffin, Diane Floyd, Larry Floyd, Beverly Coe, Mark Coe, Carpenters Local, Carpenters Local No 127, consolidated plaintiffs.

Denise Davis Schwartzman, Nicholas E. Chimicles, Chimicles & Tikellis, Haverford, PA, for National Computer Indus Alliance, Arthur Davis, consolidated plaintiffs.

Denise Davis Schwartzman, Nicholas E. Chimicles, Chimicles & Tikellis, Haverford, PA, John H. Ward, Michael Jerry Freed, Carol V. Gilden, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, Chicago, IL, for Barbara Donenberg, consolidated plaintiff.

John H. Ward, Michael Jerry Freed, Carol V. Gilden, Gilden, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, Chicago, IL, Jay F. Malcynsky, New Britain, CT, for Miller Building Systems, Inc., consolidated plaintiff.

Denise Davis Schwartzman, Nicholas E. Chimicles, Chimicles & Tikellis, Haverford, PA, for Rose Middleton, consolidated plaintiff.

Denise Davis Schwartzman, Chimicles & Tikellis, Haverford, PA, for Thomas Shallow, consolidated plaintiff.

Craig A. Raabe, Robinson & Cole, Hartford, CT, Bourke G. Spellacy, Richard S. Order, Updike, Kelly & Spellacy, P.C., Hartford, CT, Herbert Dym, Mark H. Lynch, Bobby R. Burchfield, Ethan M. Posner, Covington & Burling, Washington, DC, Jeremy G. Epstein, Shearman & Sterling, New York City, Frederick G. Herold, Thomas H. Lee, II, Dechert, Price & Rhoads, Philadelphia, PA, John P. Lynch, Joseph A. Sullivan, Latham & Watkins, Chicago, Il, William Kennedy Dodds, Dechert Price & Rhoads, New York City, Lawrence B. Clark, Robert D. Eckinger, Laurence J. McDuff, Lange, Simpson, Robinson & Somerville, Birmingham, AL, for Smithkline Beecham Clinical Labs, Inc., defendant.

Trudie R. Hamilton, Carmody & Torrance, Waterbury, CT, Jeremy G. Epstein, Shearman & Sterling, New York City, James R. Warnot, Jr., Shearman & Sterling, New York City, Thomas H. Lee, II., Dechert, Price & Rhoads, Philadelphia, PA, Hollinger F. Barnard, James C. Barton, Jr., Johnston, Barton, Proctor & Powell, Birmingham, AL, for Clinical Lab Svc Inc., consolidated defendant.

Jonathan D. Elliot, Kleban & Samor, Pc, Southport, CT, William M. Billings, Andrew M. Bernstein, Jacobowitz, Garfinkel & Lesman, New York City, for American Medical Collection Agency, consolidated defendant.

James W. Gewin, John Edward Goodman, Bradley Arant Rose & White, Birmingham, AL, David P. King, Hogan & Hartson, Baltimore, MD, for Laboratory Corp of America Holdings, consolidated defendant.

William M. O'Donnell, III, Carmody & Torrance, Waterbury, CT, Jeremy G. Epstein, James R. Warnot, Jr., Thomas H. Lee, II., David P. King, Dechert, Price & Rhoads, Philadelphia, PA, for Clinical Lab Svc Inc., movant.

William M. Bloss, Jacobs, Grudberg, Belt & Dow, P.C., New Haven, CT, for Martha May, movant.

### RULING ON THE DEFENDANT'S MOTIONS TO DISMISS

COVELLO, Chief Judge.

This is an action for legal and equitable relief in which the plaintiffs, thirty-seven health care insurers and payers for health care services and two putative class actions, claim that the defendant, SmithKline Beecham Clinical Laboratories, Inc. ("SBCL"), engaged in, *inter alia*, fraudulent billing practices.[1] The amended com-

---

1. On February 4, 1998, this court consented to the transfer of all related actions to this court for coordinated and consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407.

Currently before the court are the defendant's three motions to dismiss. Because the defendant raises essentially the same arguments with respect to the *Blue Cross, Clark* and *Watkins* plaintiffs, the court will rule on the three motions together. The court will

plaint alleges causes of action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"), and under common law tenets sounding in unjust enrichment and restitution. The defendant now moves to dismiss the amended complaint in its entirety under Fed.R.Civ.P. 12(b)(6) and 28 U.S.C. § 1367.

The issues presented are as follows: 1) whether the amended complaint alleges with sufficient particularity a RICO enterprise and, if so, whether the "person" and the "enterprise" are sufficiently distinct under 18 U.S.C. § 1962(c); 2) whether the plaintiffs are fiduciaries within the meaning of ERISA and, thus, have standing to proceed under ERISA; and 3) whether the court should recognize a federal common law cause of action concerning unjust enrichment and/or restitution in favor of non-fiduciaries under ERISA.

For the reasons hereinafter set forth, the court concludes that: 1) the amended complaint fails to allege with sufficient particularity a RICO enterprise, and the "per-

son" and the "enterprise" are not sufficiently distinct under 18 U.S.C. § 1961(c); 2) based upon the pleadings as they currently exist, the court is unable to determine whether any of the plaintiffs are "fiduciaries" within the meaning of ERISA to establish standing; and 3) the court declines to recognize a federal common law cause of action for unjust enrichment in favor of non-fiduciaries. Accordingly, the defendant's motions to dismiss the *Blue Cross* amended complaint (document no. 55), the *Clark* amended complaint (document # 113), and the *Watkins* complaint (document no. 57) are hereby GRANTED. The plaintiffs are granted leave to replead their RICO and ERISA causes of action consistent with this ruling.

### FACTS

The record discloses that the plaintiffs are thirty-seven health insurers and payers for health care services and two putative class actions.[2] SBCL is a subsidiary of SmithKline Beecham plc, a British corporation and incorporated in the state of Delaware. SBCL owns and operates one

focus on the arguments raised in SBCL's motion to dismiss the *Blue Cross* amended complaint. The court will refer to the *Blue Cross*, *Clark* and *Watkins* plaintiffs collectively as the "plaintiffs."

**2.** The *Blue Cross* plaintiffs are as follows: Blue Cross of California, California Physicians' Services (d/b/a Blue Shield of California), Aetna Life Insurance Company, Anthem Health Plans, Inc. (d/b/a/ Anthem Blue Cross and Blue Shield of Connecticut), Blue Cross and Blue Shield of Florida, Inc., Blue Cross & Blue Shield of Georgia, Inc., Golden Rule Insurance Company, John Deere Health Care, Inc., Pioneer Financial Services, Trustmark, Principal Mutual Life Insurance Company, Humana, Inc., Louisiana Health Services & Indemnity Company, Inc. (d/b/a/ Blue Cross and Blue Shield of Louisiana, Associated Hospital Service of Maine (d/b/a Blue Cross Blue Shield of Maine), Blue Cross/Blue Shield of Michigan, Allianz Life Insurance Company of North America, Blue Cross Blue Shield of Minnesota, Federated Mutual Insurance Company and Federated Service Insurance Company, Reliastar Life Insurance Company, Mutual of Omaha Insurance Company, Blue

Cross and Blue Shield of New Jersey, Inc., The Prudential Insurance Company of America, Finger Lakes Health Insurance Company, Inc. and Finger Lakes Medical Insurance Company, Inc. (d/b/a Finger Lakes Blue Cross and Blue Shield), The Guardian Life Insurance Company of America, New York Care Plus Insurance Company, Inc. (d/b/a Blue Cross and Blue Shield of Western New York and Blue Shield of Northeastern New York), New York Life Insurance Company, Blue Cross Blue Shield of North Carolina, Jefferson–Pilot Life Insurance Company, Blue Cross & Blue Shield of Rhode Island, Blue Cross and Blue Shield of Tennessee, Blue Cross and Blue Shield of Texas, Inc., Trigon Insurance Company (d/b/a Trigon Blue Cross Blue Shield), Group Hospitalization & Medical Services, Inc. (d/b/a Blue Cross Blue Shield of the National Capital Area), Blue Cross and Blue Shield United of Wisconsin and United Wisconsin Services, Inc., Employers Health Insurance Company, Time Insurance Company, and Wisconsin Physicians Service Insurance Corporation.

of the nation's largest chains of clinical laboratories.

The *Blue Cross* amended complaint[3] and the RICO Case Statement[4] alleges the following: "Over the last decade, SBCL defrauded both private and public health care payers in connection with the performance and billing of laboratory tests through the nationwide manipulation of the process by which third-party payers pay for medical services. Through false representations, misleading marketing, and simple false billing, SBCL manipulated physician ordering practices and exploited third party payers' dependence on those ordering practices in the payment of the claims."

At the core of this alleged fraudulent scheme is what the plaintiffs refer to as a nationwide "Billing Network." The scheme exploited the health care payment system in five main ways:

1) SBCL billed plaintiffs for tests that physicians did not order or intend to order and billed for tests that it had led physicians to believe would not result in separate charges ("Add-ons");

2) SBCL billed plaintiffs separately for expensive constituents of test panels that should have been billed at a single composite rate ("unbundling");

3) SBCL billed plaintiffs twice for the same procedure ("double billing");

4) SBCL performed and billed plaintiffs for more expensive tests than ordered ("upcoding"), and in some cases performed; and

5) SBCL inserted fabricated diagnosis codes to obtain reimbursement from third party payers ("code jamming").

The plaintiffs claim that, through this scheme, SBCL effectively substituted its own financially self-interested judgment for the informed, clinical judgment of physicians. The plaintiffs further claim that SBCL forced its scheme on unsuspecting physicians by offering institutional incentives and kickbacks. The incentives included test discounts, hiring physician family members, computer equipment, refrigerators, free phlebotomists' services, office draw sites and other free services, such as writing off STAT (urgent) services which were then billed to third party payers.

### STANDARD

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) involves a determination as to whether the plaintiff has stated a claim upon which relief can be granted. *Fischman v. Blue Cross Blue Shield*, 755 F.Supp. 528, 530 (D.Conn.1990). The motion must be decided solely on the facts alleged. *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985). In deciding a motion to dismiss, a court must assume all factual allegations in the complaint to be true and must draw reasonable references in favor of the non-moving party. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "When determining the sufficiency of plaintiffs' claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] plaintiffs' amended complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing the suit." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993) (citations omitted). Such motion must be granted only where no set of facts consistent with the allegations

---

**3.** The *Clark* plaintiffs incorporate by reference the *Blue Cross* amended complaint and the allegations in the *Watkins* plaintiffs' complaint are virtually identical to the *Blue Cross* amended complaint.

**4.** The court will treat the RICO Case Statement, filed pursuant to the Local Rules, as if it supplements the amended complaint. *See McLaughlin v. Anderson*, 962 F.2d 187, 189 (2d Cir.1992).

could be proven which would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## DISCUSSION

### I. RICO

The defendant first argues that the RICO claim is deficient in two respects. First, the defendant argues that the amended complaint's reference to a so-called "Billing Network" is not an "enterprise" within the meaning of RICO because the participants did not share a common fraudulent purpose with each other to perpetrate the alleged fraud. Second, because the participants, apart from SBCL, are not alleged to have played any role in the alleged fraudulent scheme, "the plaintiffs' Billing Network in reality is nothing more than the SBCL billing function, in contravention of the rule that the RICO enterprise must be a distinct organization from the defendant company. With no distinct enterprise through which SBCL is alleged to have committed the 'pattern' of mail or wire fraud, plaintiffs' RICO claim must be dismissed."

In response, the plaintiffs contend that the RICO statute contains no requirement that the participants of an "association in fact" enterprise share the fraudulent purpose of the RICO violator. With respect to the defendant's distinctiveness argument, the plaintiffs respond that the common purpose and the distinctiveness arguments are interrelated. Accordingly, the plaintiffs contend that the court should not read into the statute a restrictive common fraudulent purpose requirement.

### A. *Common Purpose*

The defendant first argues that the "Billing Network" is not a RICO enterprise. According to the defendant, a RICO enterprise is a group of individuals associated in fact functioning as a continuing unit for a common purpose of engaging in a particular course of fraudulent conduct. Instead, the defendant argues that the "Billing Network" is a "far flung, ad hoc, jumbled collection of physicians, hospitals, laboratories, and SBCL personnel that, according to the plaintiffs' own theory, had conflicting purposes and never functioned as a continuing unit." In response, the plaintiffs contend that participants in a RICO enterprise need not share a common fraudulent purpose.

The amended complaint first alleges a cause of action under 18 U.S.C. § 1962(c).[5] To state a cause of action under § 1962(c), a RICO plaintiff must show the following: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

The term "enterprise" is defined in 18 U.S.C. § 1961(4) as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." As set forth above, § 1961(4) describes two separate categories of associations that satisfy the "enterprise" requirement under RICO. The first encompasses "legal entities" such as corporations and partnerships. The second encompasses "associations in fact." 18 U.S.C. § 1961(4); *see also U.S. v. Turkette,* 452 U.S. 576, 581–82, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). It is this second category of "enterprise" that the plaintiffs claim existed in this case.

In *Turkette,* the Supreme Court stated that an "association in fact" enterprise is comprised of a "group of persons associated together for a common purpose of en-

---

5. Title 18 U.S.C. § 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt."

gaging in a course of conduct." *U.S. v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). The Court went on to explain that an enterprise is proven by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *U.S. v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

The term "enterprise" is to be defined as broadly as possible and the Second Circuit has interpreted it to be virtually "limitless." *See United States v. Indelicato,* 865 F.2d 1370, 1382 (2d Cir.), *cert. denied,* 493 U.S. 811, 110 S.Ct. 56, 107 L.Ed.2d 24 (1989); *see also United States v. Stolfi,* 889 F.2d 378, 380 (2d Cir.1989). Notwithstanding the broad and liberal interpretation afforded to the enterprise requirement, however, there are limits on what may constitute an "association in fact" enterprise. *See U.S v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

■ Relying on *Turkette,* courts in the Second Circuit have held that "for an association of individuals to constitute an 'enterprise' for purposes of RICO, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Moll v. U.S. Life Title Ins. Co.,* 654 F.Supp. 1012, 1031 (S.D.N.Y.1987) (citations omitted); *see also Cullen v. Paine Webber Group, Inc.,* 689 F.Supp. 269, 273 (S.D.N.Y.1988).

■ In *Moll,* the class action plaintiffs, consisting of purchasers of residential real estate, claimed that the defendant, U.S. Life Title Insurance Company of New York, entered into agreements with attorneys to rebate a portion of the premiums paid by purchasers for title insurance in return for the referral of title insurance business. The purchasers were unaware of the rebates. In support of their RICO cause of action, the plaintiffs claimed that the group of attorneys who represented the individual purchasers and other indi-

viduals and corporate entities, including the title abstractors, were all "associated in fact" and engaged in the real estate settlement industry and that this constituted the RICO enterprise.

The defendant in *Moll* moved to dismiss the action, in part, arguing that the plaintiffs had failed to establish the existence of a RICO enterprise. Specifically, the defendant argued that the plaintiffs had "fail[ed] to state how these various individuals and entities functioned as a continuing unit or that they shared a common purpose to engage in a particular fraudulent course of conduct." *Moll v. U.S. Life Title Ins. Co.,* 654 F.Supp. 1012, 1032 (S.D.N.Y. 1987). While the complaints alleged that the enterprise did share a common purpose, namely, providing real estate settlement services to purchasers of real estate and maximizing illegal kickbacks, the court concluded that the plaintiffs failed to specify how the individuals joined together as a group to achieve these purposes. *Moll v. U.S. Life Title Ins. Co.,* 654 F.Supp. 1012, 1032 (S.D.N.Y.1987). In granting the defendant's motion to dismiss, the court stated that "it is obvious to the Court that plaintiffs' papers fail to properly plead a RICO enterprise." *Id.*

In *First Nationwide Bank v. Gelt Funding, Corp.,* 820 F.Supp. 89 (S.D.N.Y.1993), *aff'd,* 27 F.3d 763 (2d Cir.1994), *cert. denied,* 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995), the plaintiff bank brought, *inter alia,* a RICO cause of action against the defendants in which the plaintiff claimed that the defendants committed fraud by misrepresenting the value of commercial properties and thereby induced it to make non-recourse loans secured by those properties. The plaintiff claimed that the defendants, a mortgage broker and numerous unrelated borrowers, were associated in fact for the common purpose of perpetrating the fraud. The complaint alleged that this "association in fact" represented a RICO enterprise. The court noted that "[c]ourts in the Second Circuit must look to the 'hierarchy, organization,

and activities' of an association-in-fact to determine whether 'its members functioned as a unit.'" *First Nationwide Bank v. Gelt Funding, Corp.*, 820 F.Supp. 89, 98 (S.D.N.Y.1993), *aff'd*, 27 F.3d 763 (2d Cir. 1994), *cert. denied*, 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995) (citing *United States v. Coonan*, 938 F.2d 1553, 1560–61 (2d Cir.1991).[6] The court reasoned that:

> Plaintiff has not specified how all defendants, including various borrowers, joined together as a group to perpetrate the frauds alleged in the amended complaint. Plaintiff has not pleaded any facts regarding the continuity of the structure or personnel of the "Borrower Enterprise." Plaintiff merely asserts that for over six years defendants shared common fraudulent purposes and plans. Conclusory allegations that disparate parties were associated in fact by virtue of their involvement in the real estate industry in the 1980s are insufficient to sustain a RICO claim, absent allegations as to how the members were associated together in an 'enterprise.' Nor does common sense support the existence of such an 'enterprise.'

*Id. See also Cullen v. Paine Webber Group, Inc.*, 689 F.Supp. 269, 273 (S.D.N.Y.1988) (holding that clients of broker-plaintiffs did not share a common purpose or association to establish a RICO enterprise).

In the present case, the amended complaint alleges that SBCL, working with and through the hospitals, physician practice groups, independent laboratories, and independent physicians who were induced to order unnecessary and expensive tests, created a "Billing Network" to facilitate and enhance its scheme, that this "Billing Network" constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

The amended complaint further alleges that SBCL positioned itself in this nationwide billing system to be able to mislead physicians and, in some cases, assumed the billing duties, whereby SBCL not only controlled which tests were to be performed, but also handled the billing to the individual or the specific health plan, almost essentially eliminating the physician from the process. By the plaintiffs' own account, SBCL's scheme exploited the trust of both patients and payers in the physicians, as well as the trust of the physicians in SBCL.

Unlike *Moll* and *First Nationwide Bank*, where the plaintiffs at least alleged a "common purpose," that is, respectively, the receipt of kickbacks and the misrepresentation of the value of commercial property, the plaintiffs herein allege no such "common purpose." In *Moll* and *First Nationwide Bank*, notwithstanding the alleged common purpose, the respective courts rejected the parties' claims that a RICO enterprise existed because the independent frauds committed by the participants did not constitute a single RICO enterprise.

Here, the plaintiffs, in their opposition to the defendant's motion to dismiss, claim that the common purpose of the enterprise is "the billing and testing for medical services." Drawing all reasonable inferences in favor of the plaintiffs as the non-moving party, as the court is required to do, the court is still unable to conclude that SBCL and the physicians, hospitals and laboratories shared a "common purpose."

In *Moll*, the court rejected the plaintiffs claim that an "association in fact" enterprise existed by virtue of the defendant title insurance company, attorneys and title abstractors involvement in the real estate settlement industry in New York. *Moll v. U.S. Life Title Ins. Co.*, 654 F.Supp. 1012, 1032 (S.D.N.Y.1987). Similarly, absent from the plaintiffs' explanation of the common purpose of the "Billing Network" enterprise is how this "group of

---

**6.** The District of Connecticut's Standing Order in Civil RICO Cases is also in accord, requiring plaintiffs to describe the "structure, purpose, function and course of conduct of the enterprise." *See* Standing Order at 6(b).

persons associated together for a common purpose of engaging in a course of conduct"; *U.S. v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); and how they "functioned as a continuing unit." *Id.*

The amended complaint essentially alleges that SBCL engaged in fraudulent billing practices through its manipulation of the nationwide health care billing system. The 250 paragraph, 80 page amended complaint is devoid of any specific allegation that any physician, hospital, or laboratory shared SBCL's alleged common purpose to defraud public and private health care payers. Accordingly, the court concludes that the "Billing Network" enterprise fails because the physicians, hospitals or laboratories did not act to further SBCL's alleged common scheme to defraud the plaintiffs.

In its reply brief, the defendant argues that the court need not decide whether the participants in an "association in fact" enterprise must all share a common *fraudulent* purpose, because the participants in the "Billing Network" lack not only a common *fraudulent* purpose, but any common purpose at all.

While *Moll* and *First Nationwide Bank* involved "association in fact" enterprises engaged in fraudulent activity, the definition of an "association in fact" in *Turkette* is clear. In *Turkette,* the Supreme Court stated that an "association in fact" enterprise is comprised of a "group of persons associated together for a common purpose of engaging in a course of conduct." *U.S. v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Because the amended complaint and RICO case statement fails to allege that SBCL and the individual physicians, hospitals or laboratories acted as a "group of persons associated together for a common purpose of engaging in a course of conduct," the so-called "Billing Network" does not constitute a RICO "enterprise."

To the extent that the plaintiffs claim that certain physicians became aware of the scheme and were silenced through the use of kickbacks, this bare allegation in the amended complaint is insufficient to establish a RICO enterprise. Accordingly, the defendant's motion to dismiss the RICO count is granted, but the plaintiffs are granted leave to replead consistent with the language of the decision herein.

### B. *Distinctiveness*

The defendant next argues that even, assuming *arguendo,* the participants share a common purpose, the RICO cause of action still fails because SBCL represents not only the person, but also the enterprise. The plaintiffs respond that the common purpose and the distinctiveness arguments are interrelated.

In the Second Circuit, it is clear that under § 1962(c) the "person" and the "enterprise" must be distinct. *Bennett v. United States Trust Co.,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). "[A] corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." *Id.; see also Riverwoods Chappaqua Corp. v. Marine Midland Bank,* 30 F.3d 339 (2d Cir.1994).

The court has already concluded that the physicians, hospitals and laboratories played no role in the allegedly fraudulent activity, leaving only SBCL as the sole remaining participant in the scheme. Because SBCL cannot be both the "person" and the "enterprise," the plaintiffs have failed to allege a violation under § 1962(c).

### II. ERISA

The defendant next argues that the amended complaint fails to adequately allege that the plaintiffs acted as a "fiduciary" within the meaning of ERISA for any employee benefit plan that might have made payments to SBCL and, therefore, lack standing to proceed under ERISA.

In response, the plaintiffs contend that their amended complaint adequately alleges "fiduciary" status to survive the defendant's motion to dismiss.

ERISA's civil enforcement provision, 29 U.S.C. § 1132, provides, in part, that a civil action may be brought "by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a)(3). Because the plaintiffs do not claim to be participants or beneficiaries, the only issue is whether the plaintiffs are fiduciaries under their respective employee benefit plans. To be a fiduciary under ERISA, a party must demonstrate that "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

■ While the court is mindful of the liberal pleading standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80, with respect to alleging "fiduciary" status within the meaning of ERISA, *Conley* "does not permit conclusory statements to substitute for minimally sufficient factual allegations." *Furlong v. Long Island College Hosp.*, 710 F.2d 922, 927 (2d Cir.1983); *see also Sirna v. Prudential Securities, Inc.*, 1997 WL 53194 (S.D.N.Y. February 10, 1997) (rejecting plaintiffs' bald legal assertion that defendant was a fiduciary under ERISA).

In support of the ERISA claim, the amended complaint alleges that "[i]n paying claims to SBCL, Plaintiffs have acted in various roles, including as fiduciary of one or more employee benefit plans within the meaning of 29 U.S.C. § 1003." The amended complaint is devoid of any allegation that any one of the plaintiffs exercised any discretionary authority or control with respect to the management or administration of any plan or rendered any investment advice with respect to any plan. *See* 29 U.S.C. § 1002(21)(A). Accordingly, the defendant's motion to dismiss the ERISA count is granted, but the plaintiffs are granted leave to replead consistent with the language of the decision herein.

## III. Federal Common Law Claim

The defendant finally argues that the unjust enrichment count should be dismissed on the ground that the court should not recognize a federal common law cause of action in favor of non-fiduciary insurers for unjust enrichment under ERISA. In response, the plaintiffs contend that a federal common law cause of action for unjust enrichment already exists under ERISA. The plaintiffs further contend that if the court does not recognize such a cause of action, the non-fiduciary insurers would be left without a remedy.

As this court has already stated, ERISA's civil enforcement provision, 29 U.S.C. § 1132, provides, in part, that a civil action may be brought "by a participant, beneficiary, or fiduciary." 29 U.S.C. § 1132(a)(3). It is undisputed that the plaintiffs are not participants or beneficiaries within the meaning of ERISA. To the extent that certain plaintiffs can sufficiently allege "fiduciary" status within the meaning of ERISA, those plaintiffs can maintain an ERISA action. In addition to the three parties specifically enumerated in § 1132(a)(3) who can bring an action under ERISA, the plaintiffs argue that the court should expand the scope of § 1132(a)(3) to include a fourth party, that of non-fiduciary.

■ Although "[t]here is, of course, 'no federal general common law,'" *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)), the United States Supreme Court has recognized "the need and

authority in some limited areas to formulate what has come to be known as 'federal common law'.... These instances are 'few and restricted,' and fall into essentially two categories: those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' ... and those in which Congress has given the courts the power to develop substantive law...." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (citations omitted). It is only the former category that is arguably at issue in this case. Therefore, the court's inquiry is confined to whether the matter should be governed by federal common law because it involves a "uniquely federal interest."

■ In *Boyle v. United Technologies Corp.*, 487 U.S. 500, 507, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988), the Supreme Court set forth a two pronged inquiry for determining the propriety of applying the federal common law in the absence of a Congressional grant of authority. The court must first inquire into whether the action implicates a "uniquely federal interest." *Id.* at 504, 108 S.Ct. 2510. If this question is answered in the affirmative, the court must then determine whether a "significant conflict" exists between an identifiable federal policy or interest and the application of state law to the dispute, or whether the application of state law would frustrate specific objectives of federal legislation. *Id.* at 507, 108 S.Ct. 2510.

■ With respect to the first inquiry, the Supreme Court has emphasized the narrow scope of these uniquely federal interests as follows: "absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with for-

eign nations, and admiralty cases." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (footnotes omitted).

■ In support of their argument that a federal common law cause of action for unjust enrichment already exists under ERISA, the plaintiffs rely upon *Provident Life & Accident Ins., Co. v. Waller*, 906 F.2d 985 (4th Cir.), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). In *Waller*, the plaintiff, a *plan administrator*, brought an action under ERISA, 29 U.S.C. § 1132(a)(1)(B), against one of its participants for the reimbursement of an advancement made to her following an automobile accident. Having concluded that the issue of whether a federal common law cause of action exists under ERISA is of "central concern" to the statute, thus, invoking the court's federal question jurisdiction under 28 U.S.C. § 1331(a), the court went on to conclude that "the absence of an express statutory grant of jurisdiction in § 1132 of ERISA, under the rational of [*Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) ], [is] irrelevant." *Provident Life & Accident Ins., Co. v. Waller*, 906 F.2d 985, 991 (4th Cir.), *cert. denied*, 498 U.S. 982, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990).

The court reasoned that the recognition of a federal common law cause of action was consistent with ERISA's provision providing for the return of mistakenly paid contributions made by employers to multiemployer plan funds, *see* 29 U.S.C. § 1103(c)(2)(A), and also consistent with the contract between the parties that provided for the repayment of the advanced monies. Based on these two factors, the court concluded that, while the plaintiff was not a participant or beneficiary under § 1132(a)(1)(B), a federal common law cause of action for unjust enrichment existed in favor of the plan administrator.[7]

---

7. The court noted, however, that since a plan administrator is clearly a fiduciary within the meaning of ERISA, the plaintiff could have

brought an action under § 1132(a)(3). *Id.* at 988 n. 5 (quoting *U.S. Steel Mining Co. v.*

The *Waller* court's reliance on *Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972), however, is misplaced. The Supreme Court stated in *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981), that "absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." The Court noted in *Radcliff* that *City of Milwaukee* involved a "uniquely federal interest" because it involved an interstate water dispute.[8] No such "uniquely federal interest" existed in *Waller*. As a result, this court is unpersuaded that it should, based upon the reasoning in *Waller*, recognize a federal common law cause of action.

In *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 281 (2d Cir.1992), the court created a federal common law cause of action in favor of *plan participants* against non-fiduciaries who knowingly participated in an ERISA-fiduciary's breach of duty. The *Diduck* court's recognition of such a cause of action was necessitated by the fact that actions for breach of fiduciary duties under ERISA lie only against "the fiduciary who breaches such duty [29 U.S.C. § 1109(a)], a co-fiduciary who knowingly participates in or conceals an act or omission of another fiduciary [29 U.S.C. § 1105], or, in actions by the Secretary of Labor, against a third person who knowingly participates in a breach of fiduciary responsibility [29 U.S.C. § 1132(*l*)(1)]." *Id.* at 279–80. Thus, the *Diduck* court did not expand the scope of who can maintain an action under ERISA's civil enforcement provision, 29

U.S.C. § 1132, but, instead, recognized a federal common law cause of action in favor of plan participants, who are expressly permitted to maintain an action under 29 U.S.C. § 1132, against non-fiduciaries who knowingly participated in an ERISA-fiduciary's breach of duty. Essentially, the court created a remedy for a party who had standing under ERISA.

Unlike the plaintiff in *Diduck*, who was a proper party to bring an action in the first instance under ERISA's civil enforcement provision, the plaintiffs herein urge the court to expand § 1132 to include an entirely new class of prospective plaintiffs, i.e., non-fiduciaries. The plaintiffs seek restitution on behalf of those insurers who are not fiduciaries within the meaning of 29 U.S.C. § 1132(a)(3) for recovery of payments related to ERISA under federal common law. The court is cognizant of the fact that ERISA broadly preempts state law causes of action that "relate to" an ERISA-regulated plan. *See* 29 U.S.C. § 1144(a) ("[T]he provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...."). As a result, to the extent that the non-fiduciary insurers' claims relate to ERISA-covered plans, their state law claims are preempted.

The plaintiffs correctly point out that the non-fiduciary insurers will be left without a remedy under ERISA. This only means that they are not the proper parties to be asserting an ERISA claim. The court refuses to recognize a federal common law cause of action simply because the wrong party is attempting to assert a cause of action under a statute which is limited in scope to certain specific parties.

District 17, United Mine Workers of America, 897 F.2d 149, 152 (4th Cir.1990)).

**8.** The Court explained that interstate water dispute cases "do not directly involve state boundaries, disputes over which more often come to this Court under our original juris-

diction; they nonetheless involve especial federal concerns to which federal common law applies." *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641 n. 13, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981).

Currently before the court are numerous putative class actions in which the plaintiffs seek to recover allegedly improper payments made to SBCL. Clearly, the plaintiffs in those actions, the individual insureds, are participants within the meaning of § 1132(a)(3) and § 1002(7) and, therefore, have a cause of action under ERISA.

■ Because this case does not fall within any of the limited areas set forth by the Supreme Court in *Radcliff,* the court concludes that no "uniquely federal interest" exists. The court declines to recognize a federal common law cause of action in favor of non-fiduciaries for unjust enrichment under ERISA.[9] Accordingly, the defendant's motion to dismiss the federal common law unjust enrichment count is granted.[10]

## CONCLUSION

The defendant's motions to dismiss the *Blue Cross* amended complaint (document no. 55), the *Clark* amended complaint (*document # 113*), and the *Watkins* complaint (document no. 57) are hereby GRANTED. The plaintiffs are granted leave to replead their RICO and ERISA causes of action consistent with this ruling.

SO ORDERED, this 11th day of June, 1998, at Hartford, Connecticut.

9. Because the court has concluded that no "uniquely federal interest" exists in this case to warrant the recognition of a federal common law cause of action, the court need not reach the "significant conflict" inquiry. *See Boyle v. United Technologies, Corp.,* 487 U.S. 500, 504–507, 108 S.Ct. 2510, 101 L.Ed.2d 442 (1988).

10. The defendant also moves to dismiss the state common law causes of action concerning unjust enrichment and restitution. The defendant argues that if the court dismisses the RICO and ERISA claims, the court should decline to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367. Because the court has granted the plaintiffs leave to replead their RICO and ERISA causes of action, the court will reserve judgment on the plaintiffs' state common law claims.